[No. B052864. Second Dist., Div. Six. Nov. 27, 1991.]

OSCAR KARRIN et al., Plaintiffs and Appellants, v.
OCEAN-AIRE MOBILE HOME ESTATES et al., Defendants and
Respondents.

## COUNSEL

Richard A. Weinstock for Plaintiffs and Appellants.

Crosby & Stanton and Bruce E. Stanton as Amici Curiae on behalf of Plaintiffs and Appellants.

Lowthorp, Richard, McMillan, Miller, Conway & Templeman and Patrick T. Loughman for Defendants and Respondents.

Gary L. Gillig, City Attorney (Oxnard), Lawler, Bonham & Walsh and James F. Rupp, Jr, as Amici Curiae.

## OPINION

**YEGAN, J.**—Oscar Karrin et al. (Karrin), tenants of defendant Ocean-Aire Mobile Home Estates et al. (Ocean-Aire), appeal from the judgment upholding the validity of a monthly capital improvement assessment charged by Ocean-Aire for the repavement of roads within the park. This fee was assessed pursuant to ordinance number 2064 of the City of Oxnard "establishing a mobilehome park rent stabilization system." Because the California Mobilehome Residency Law (Civ. Code, § 798 et seq.; see especially § 798.31) precludes park owners from charging such fees, we reverse.

On February 11, 1986, the city enacted the ordinance, which became effective March 13, 1986. "Subject to the requirements of state law," section 17.1-7(c) of the ordinance permits a mobilehome park owner to "segregate and separately bill the actual cost for any mobilehome ordinance assessment . . . and pass on any increase in such charges as they occur." Section 17.1-7(c) also states that "[s]uch assessments and charges shall thereafter not be part of the space rent." It states that "[a]n owner shall segregate and separately bill the actual cost for a capital improvement for as long as the owner amortizes the capital improvement. . . ."

Section 17.1-2(i) also expressly excludes such assessments from the ambit of space rent. It states, in pertinent part: "Space rent" is "[t]he consideration

on a monthly basis, . . . in connection with the use and occupancy of a mobilehome space in a mobilehome park, but exclusive of: [¶] . . . . [¶] (5) [p]assthrough items, including but not limited to mobilehome ordinance assessment, . . . and capital improvements."

Section 17.1-2(d) defines capital improvements to include ". . . replacement of any existing thing or item in the park." It is undisputed that road repavement is a capital improvement under the ordinance.

Section 17.1-7(c) provides that "[n]o assessments for capital improvements may be passed on to the tenants until the owner obtains the approval of 50% plus 1 of the spaces of the mobilehome park. If the owner obtains the approval . . . , the . . . assessment shall passthrough to the tenants without any further action."

On or about February 20, 1986, Ocean-Aire notified Karrin and its other tenants by letter that it would hold an election to determine whether or not they desired to assess themselves $7.35 per month for the purpose of repaving roads within the park. Among other things, the letter indicated that if the driveway repairs were approved, the anticipated cost per month per tenant would be $7.75. It also indicated that if the tenants refused to approve the repavement, Ocean-Aire expected to charge $27.50 per month for insurance and that "street repairs would still be required in a year or two and undoubtedly would be passed (on) [sic] to the tenant with City approval."

Although the ordinance was not effective until March 13, 1986, Ocean-Aire held the election on February 27, 1986, and obtained tenant approval to implement the assessment for repavement.

On April 1, 1986, Ocean-Aire provided written notice that "Pursuant to California Civil Code Provisions 60 day notice is hereby given that the capital improvement assessment for blacktopping of $7.35 will be payable monthly in addition to the regular rent effect [sic, effective] June 1, 1986."

Since June 1, 1986, all tenants, except for Karrin, have been paying the assessment.

On September 2, 1986, Karrin filed this class action suit against Ocean-Aire seeking declaratory and injunctive relief, as well as damages, regarding this assessment.

On September 4, 1990, the trial court upheld the election and the assessment. Karrin appealed the judgment. ▇ He contends, inter alia, that the

assessment is illegal because Civil Code section 798.31 forbids mobilehome park owners from charging tenants "a fee for other than rent, utilities, and incidental reasonable charges for services actually rendered." We agree with Karrin and reverse.

We have taken judicial notice of the September 10, 1991, Oxnard City Council Resolution No. 10233 which purports to nunc pro tunc declare its intent that the $7.35 per month from June 1, 1986, to May 31, 2005, ". . . is and was part of the rent" whether separately billed or not. This resolution is inapposite to the resolution of this appeal. ■ "Matters occurring after entry of judgment are ordinarily not reviewable: The appeal reviews the correctness of the judgment or order as of the time of its rendition, leaving later developments to be handled in subsequent litigation. [Citation.]" (9 Witkin Cal. Procedure, Appeal (3d ed. 1985) § 252, pp. 258-259.)

■ Because Karrin claims constitutional objections to the validity of this ordinance, he need not first exhaust administrative remedies to proceed with this judicial action. (*Park 'N Fly of San Francisco, Inc.* v. *City of South San Francisco* (1987) 188 Cal.App.3d 1201, 1207-1208 [234 Cal.Rptr. 23]; *City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123, 135 [610 P.2d 436, 12 A.L.R.4th 219].)

Because the issues before us are purely questions of law, we are not bound by the trial court's judgment. (*City of Los Angeles* v. *Los Olivos Mobile Home Park* (1989) 213 Cal.App.3d 1427, 1431 [262 Cal.Rptr. 446].) We independently evaluate the meaning of the ordinance and the California Mobilehome Residency Law which are involved here. (*Jones* v. *California Interscholastic Federation* (1988) 197 Cal.App.3d 751, 756 [243 Cal.Rptr. 271].)

■ "The fundamental rule of statutory construction is that the court should ascertain the intent . . . so as to effectuate the purpose of the law. [Citations.] '. . . [E]very statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' [Citation.] If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. [Citation.]" (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].)

California Constitution, article XI, section 7 states, in pertinent part: "A . . . city may make and enforce . . . all . . . ordinances and regulations not in conflict with general laws."

Article 4 of the California Mobilehome Residency Law is entitled "Fees and Charges." Section 798.31 thereof states: "A homeowner shall not be

charged a fee for other than rent, utilities, and incidental reasonable charges for services actually rendered."

We agree with the Legislative Counsel of California that the instant capital improvement assessment fee charged pursuant to the ordinance is null and void because such fees are in conflict with Civil Code section 798.31. (See Ops. Cal. Legis. Counsel, No. 20555 (Dec. 8, 1986).) Local legislation in conflict with general law is preempted by state law and is void. (*Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 290 [707 P.2d 840].) As the ordinance itself states, this fee is distinct from charges for rent, utilities or services rendered. (Oxnard City Council Res. No. 10233, *supra.*)

" 'Conflicts exist if the ordinance duplicates [citations], contradicts [citations], or enters an area fully occupied by general law, either expressly or by legislative implication [citations]. . . .' " (*Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at pp. 290-291, and see pp. 290-293.)

Conflicts also exist if the subject matter of the ordinance is partially covered by a general law which is couched in terms indicating that the state will not tolerate further or additional local action on the particular matter. (*Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at pp. 292-293.)

We look to the language of the state law, its purpose and scope to see whether it indicates an intent to preempt local regulations on particular "phases of the subject." (*In re Loretizo* (1963) 59 Cal.2d 445, 446 [380 P.2d 656]; *California Water & Telephone Co.* v. *County of Los Angeles* (1967) 253 Cal.App.2d 16, 27 [61 Cal.Rptr. 618], citing numerous Supreme Court decisions.)

The California Mobilehome Residency Law is "fairly detailed and comprehensive" regarding those aspects of mobilehome park residency it purports to regulate. (*Gregory* v. *City of San Juan Capistrano* (1983) 142 Cal.App.3d 72, 84 [191 Cal.Rptr. 47], overruled on other grounds in *Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 686, fn. 43 [693 P.2d 261].) The Legislature intended "to strictly limit the ability of park management to collect fees from any source except . . . for services performed." (*People* v. *Mel Mack Co.* (1975) 53 Cal.App.3d 621, 627-628 [126 Cal.Rptr. 505].) *Mel Mack* concerned Civil Code former section 789.7 which, like section 798.31, "expressly prohibited [the park operator] from charging any fees to tenants other than charges for rent, utilities or incidental services." (*Id.,* at p. 627.)

Here, as in *Carson Mobilehome Park Owners' Assn.* v. *City of Carson* (1983) 35 Cal.3d 184, 188 [197 Cal.Rptr. 284 [672 P.2d 1297], Ocean-Aire

could have submitted an application for a discretionary rent increase pursuant to the ordinance. (See § 17.1-9.) State law does not prohibit local rent control ordinances, and the instant provisions permitting application for discretionary rent increases remain valid because the ordinance contains a severability clause. (See § 17.1-19.)

Similarly, in *Palos Verdes Shores Mobilehome Estates, Ltd.* v. *City of Los Angeles* (1983) 142 Cal.App.3d 362, 366 [190 Cal.Rptr. 866], a park owner could obtain an "adjustment in rent" from the community development department "where the landlord shows: [¶] 1. It has 'completed a capital improvement [fn. omitted] with respect to a rental unit and has not increased the rent to reflect the cost of such improvement'. . . ."

Under section 17.1-9(c), the rent review board may consider a variety of factors in determining whether or not to approve a park owner's application for a discretionary rent increase. (See *Carson Mobilehome Park Owners' Assn.* v. *City of Carson, supra,* 35 Cal.3d at p. 188.) One of those factors is capital improvements.

Ocean-Aire cites *Oceanside Mobilehome Park Owners' Assn.* v. *City of Oceanside* (1984) 157 Cal.App.3d 887 [204 Cal.Rptr. 239], to support its position that it may charge an assessment to recover capital improvement costs upon consent of the tenants. The *Oceanside* court held, inter alia, that a prior written consent provision of a local ordinance for inclusion of the costs of capital improvements as an operating expense does not deny *park owners* equal protection and due process. The court held it a rational requirement of the ordinance to require prior consent because it "promotes the underlying purpose of the ordinance and realistically addresses the fact mobilehome owners are enclosed within a captive market." (*Oceanside, supra,* at p. 910.) The court stated that such a requirement "rationally respond[s] to the underlying purposes of the ordinance . . . to eliminate excessive rents created by exploiting market conditions (i.e. an actual housing shortage)." (*Ibid.*) The prior consent requirement "recognizes not only the realities of a captive market, but also the proprietary interests mobilehome owners have individually and cumulatively in their homes and appurtenances." (*Id.,* at p. 911.)

In upholding the prior consent requirement, the *Oceanside* court expressed deep concerns about the severe realities mobilehome tenants face. Unlike the instant case, however, the *Oceanside* court was not asked to juxtapose the ordinance with the state Mobilehome Residency Law which prohibits such fees.

Moreover, it is unclear to us whether the "operating" expenses discussed in *Oceanside* were to be included as rent or were to be separately charged as

an assessment. (See *Oceanside Mobilehome Park Owners' Assn.* v. *City of Oceanside, supra,* 157 Cal.App.3d at pp. 894-895, 910-911.) The instant ordinance, as passed February 11, 1986, expressly distinguishes between rent and assessments for pass-through items charged by Ocean-Aire.

Ocean-Aire sought this charge as a capital improvement assessment, not as rent. Ocean-Aire has not billed this charge as rent, but as an assessment payable separately on a monthly basis over a 19-year period specifically to pay for repairing internal roadways. As such, it is preempted by section 798.31.

There is no question that this charge is not for utilities. It cannot be considered a charge for services either. Capital improvements to enhance the utility or safety of the park generally are not services such as the performance of regular maintenance tasks—e.g., the weekly cleaning of a swimming pool. (See Ops. Cal. Legis. Counsel, No. 20555, *supra,* at p. 3.)

The standard lease signed by Karrin in 1981 indicates that Ocean-Aire would provide "streets and street lights." The only inference which can be drawn is that the "rent" would include use of the streets and that they were to be adequately maintained and kept in good repair by Ocean-Aire in consideration for the agreed upon rent. (See also Civ. Code, § 798.15, subd. (d).)

Because our holding that the capital assessment provisions of the ordinance are invalid is dispositive of this appeal, we need not discuss the numerous other issues raised by Karrin.

The judgment is reversed with directions to enter a judgment in favor of appellants. Costs to Karrin.

Stone (S. J.), P. J., and Gilbert, J., concurred.

A petition for a rehearing was denied December 19, 1991.