[No. E012757. Fourth Dist., Div. Two. Sept. 26, 1994.]

ED ROBINSON et al., Plaintiffs and Appellants, v.
CITY OF YUCAIPA et al., Defendants and Respondents;
C. MOUCHAWAR, Real Party in Interest and Respondent.

**COUNSEL**

Marvin T. Sawyer for Plaintiffs and Appellants.

Brunick, Alvarez & Battersby, Marguerite P. Battersby and Amy Greyson for Defendants and Respondents.

Hart, King & Coldren, Robert S. Coldren and C. William Dahlin for Real Party in Interest and Respondent.

## Opinion

**DABNEY, Acting P. J.**—Ed Robinson and Audrey Wilson (residents) appeal from the trial court's denial of their petition for a writ of administrative mandamus. Residents sought to set aside a decision of the Mobilehome Rent Review Commission (Commission) of the City of Yucaipa (City) allowing a capital improvement rent increase to real party in interest, C. Mouchawar, the owner of Hidden Village Mobile Home Estates (the park).

Residents contend Civil Code section 798.31 preempts the City's ordinance allowing a rent increase based on capital improvement expense and the interest thereon; the court erred in applying the City's rules relating to approval of capital improvement rent increases; the trial court used the wrong standard of review; the ordinance allowing an assessment for a capital improvement rent increase is void as against public policy; and the trial court erred in awarding attorney fees to Mouchawar.

Mouchawar has moved to strike residents' challenge to the award of attorney fees on the ground this court has no jurisdiction to hear the challenge. Residents' notice of appeal was filed before the award was made, and residents did not file a second notice of appeal to preserve the issue. This court reserved ruling on the motion for consideration with the appeal.

### Facts

Residents are owners and residents of mobilehomes occupying spaces in the park under month-to-month leases. Between June 1988 and September 1989, Mouchawar resurfaced the streets in the park with a two-inch layer of asphalt. Mouchawar collected rent from residents for this street work in 1989 and 1990 through normal rental increases.

On June 18, 1990, the city council imposed an interim rent freeze on mobilehome parks until December 31, 1990, and authorized the creation of a rent review commission. On January 1, 1991, the city council enacted Ordinance No. 63 (the ordinance) which established a comprehensive rent control system for mobilehome parks within the City and provided for the

appointment of a rent administrator and creation of a rent review commission to review and act upon applications for rent increases. Following adoption of the ordinance, all space rents in mobilehome parks were rolled back to those in effect on December 31, 1988. Those rents became the base rents for purposes of determining later rent increases.

The ordinance establishes procedures for parks to seek annual rent increases based on two-thirds of the increase in the consumer price index. The ordinance allows individual park rent increases, including a rent adjustment based upon a capital improvement,[1] a net operating income adjustment, and a fair return adjustment. The ordinance also provides for rent decreases upon the discontinuation or reduction of services or amenities. Under the ordinance, the City created the Commission to hear and act upon applications and appeals regarding rent increases sought under the ordinance. The City also adopted administrative procedural rules (rules) to implement the ordinance.

The ordinance forbids any rent increase without the approval of the City. To obtain a rent increase, a park owner must submit an application to be reviewed by the rent administrator, who makes the initial determination to grant or deny an increase. Residents of mobilehome parks are given notice of the rent administrator's decision and have a specified period to appeal to the Commission. If an appeal is filed, the Commission holds a noticed public hearing and may affirm, modify, or reverse the decision of the rent administrator.

In February 1991, Mouchawar applied for a capital improvement rent increase under the ordinance to recover the costs of resurfacing roads in the

---

[1] Section 7(B) of the ordinance states, "1. An application for a rent increase based on the cost of a completed capital improvement may be filed with the Rent Administrator. It shall be approved if it satisfies the definition of Capital Improvement set forth in Section 2(B) hereof and the criteria set forth in the Capital Improvement Guidelines adopted by resolution of the City Council and 51% of the spaces in the park, with one vote per space, have consented to the capital improvement. Any increase granted shall be amortized over the useful life of the improvement and apportioned equally among all rental spaces in the mobilehome park by dividing the verified cost of the improvement by its useful life (in years), dividing that result by twelve and further dividing by the number of spaces in the mobilehome park. An increase application which meets all other requirements of this Subsection but has not been consented to by 51% of the spaces may be granted when the improvement is necessary to protect the health and safety of the park [sic], its residents or its neighbors. Any increase granted under this Subsection shall remain in effect only during the useful life of the improvement. Any such increase shall not be included as part of the monthly space rent but shall be itemized as a separate charge either on the residents' monthly rent statement or on a separate statement."

Section 2(B) of the ordinance states, "Capital improvement shall mean the installation of new improvements or facilities and/or the replacement or reconstruction of existing improvements and facilities which consist of more than ordinary maintenance or repairs, have a useful life of at least five years and satisfy the requirements of Subsection 7(B) hereof."

park. The rent administrator initially denied the application on the ground the cost of the work was part of the normal rent. However, on December 12, 1991, the rent administrator approved a monthly increase of $10.59 per space, including interest, after Mouchawar provided further documentation.

The Hidden Village Residents' Association filed an appeal of the rent administrator's decision. The Commission held a hearing on the appeal on February 20, 1992. The Commission determined that the actual cost of the work was $75,200, the amortization period was 156 months, and interest at the rate of 8.5 percent annually should be allowed during that period.[2] The Commission also found that Mouchawar had collected $11,664 for the work in rent increases in 1989 and 1990, and the Commission credited residents with that amount. The net monthly increase per space was calculated at $9.63 for 156 months.

Residents filed a petition for writ of mandate seeking to set aside the rent increase. The trial court denied the petition, and this appeal ensued.

## DISCUSSION

Residents contend that the portion of the ordinance allowing capital improvement rent increases is preempted by Civil Code section 798.31,[3] part of the Mobilehome Residency Law, Civil Code section 798 et seq. (*Karrin* v. *Ocean-Aire Mobile Home Estates* (1991) 1 Cal.App.4th 1066 [2 Cal.Rptr.2d 581].) Residents contend that rent, under the Mobilehome Residency Law, refers solely to the fee for occupation of space by a mobilehome. Thus, they contend, any charge for capital improvements on common areas is impermissible under Civil Code section 798.31.

A local ordinance will be preempted by state law when it is in express conflict with state law. (Cal. Const., art. XI, § 7; *Palos Verdes*

---

[2] The rules adopted to implement the ordinance provide for calculating interest to be allowed in connection with capital improvement rent increases. Section 5.0005 of the rules states, "The applicant shall provide documentary evidence of the actual cost incurred for the capital improvement. The cost thereof shall include the interest expense incurred on money borrowed to pay for the capital improvement. In those cases where the owner finances the capital improvement or part thereof with his/her own funds, interest at the legal rate of interest computed over a reasonable amount of time shall be included as part of the capital improvement cost. In determining the reasonable amount of time over which interest shall be allowed, the RA shall be guided by the current practices of state and federally chartered banks and/or savings and loan associations as to the length of time for repayment of improvement loans, provided, however, that the time shall not exceed the amortization period determined by the RA and used in calculating the allowable capital improvement rent increase."

[3] Civil Code section 798.31 states, "A homeowner shall not be charged a fee for other than rent, utilities, and incidental reasonable charges for services actually rendered."

*Shores Mobile Estates, Ltd.* v. *City of Los Angeles* (1983) 142 Cal.App.3d 362, 373 [190 Cal.Rptr. 866].) Preemption may also occur even when there is no direct conflict if the state has fully occupied the field. (*Galvan* v. *Superior Court* (1969) 70 Cal.2d 851 [76 Cal.Rptr. 642, 452 P.2d 930].)

■ Courts have held that the Mobilehome Residency Law does not "occupy the field" so as to preempt the enactment of local rent control ordinances, even though the statutory scheme governs many aspects of the landlord-tenant relationship. (See, e.g., *Palos Verdes Shores Mobile Estates, Ltd.* v. *City of Los Angeles, supra,* 142 Cal.App.3d at pp. 373-374.) Thus, the question becomes whether the local ordinance conflicts with any portion of the Mobilehome Residency Law.

The Mobilehome Residency Law does not specifically define rent. It does, however, define tenancy as "the right of a homeowner to the use of a site within a mobilehome park on which to locate, maintain, and occupy a mobilehome, site improvements, and accessory structures for human habitation, *including the use of the services and facilities of the park.*" (Civ. Code, § 798.12, italics added.) Rent is commonly understood to be payment for tenancy. Thus, under the Mobilehome Residency Law, rent may be based in part on use of common areas of a mobilehome park.

The ordinance, consistent with this view of rent under the Mobilehome Residency Law, encompasses a broader meaning for rent than that proposed by the residents. The ordinance defines rent as "the consideration paid for use or occupancy of a mobilehome space *and the provision of related housing services.*" (Ord., § 2(H), italics added.) The ordinance defines housing services as "services connected with use or occupancy of a rental space in a mobilehome park *which are provided to residents for the rent charged for a space* including, but not limited to, utilities, ordinary repairs, replacement and maintenance, laundry facilities, recreational facilities, a resident manager, refuse removal, parking, street cleaning and maintenance, and other benefits, privileges, facilities or terms and conditions of the residency." (Ord., § 2(D), italics added.) Thus rent, under the ordinance, includes more than just occupancy of a site in the park.

■ Residents contend that the increase was not a rent adjustment but an impermissible fee. To support this position, they cite *Karrin* v. *Ocean-Aire Mobile Home Estates, supra,* 1 Cal.App.4th 1066. In *Karrin,* the court held that capital improvement assessment fees charged to mobilehome park residents by the park owner under an ordinance of the City of Oxnard were void. The court held that imposition of such fees conflicted with Civil Code section 798.31 which provides that a park owner shall not charge a fee other than for rent, utilities, and services actually rendered.

The *Karrin* court described Oxnard's ordinance as follows: " 'Subject to the requirements of state law,' section 17.1-7(c) of the ordinance permits a mobilehome park owner to 'segregate and separately bill the actual cost for any mobilehome ordinance assessment . . . and pass on any increase in such charges as they occur.' Section 17.1-7(c) also states that '[s]*uch assessments and charges shall thereafter not be part of the space rent.*' It states that '[a]n owner shall segregate and separately bill the actual cost for a capital improvement for as long as the owner amortizes the capital improvement. . . .' " (*Karrin* v. *Ocean-Aire Mobile Home Estates, supra,* 1 Cal.App.4th at p. 1068, italics added.) Other parts of the ordinance defined rent to include the consideration for the use of a space in the mobilehome park, but *not* to include assessments for capital improvements. (*Id.,* at pp. 1068-1069.)

Here, the City's ordinance states that capital improvement increases "shall not be included as part of the monthly space rent." (Ord., § 7(B).) However, unlike Oxnard's ordinance, other parts of the City's ordinance do not distinguish between rent and assessments for capital improvements, but rather treat capital improvement adjustments as one of the components of the rental rate formula. (Ord., § 7.) Moreover, as noted above, the City's ordinance defines rent to include the consideration paid not only for use of a space on which to place a mobile home but also for related housing services. (Ord., § 2(H).)

Reading the ordinance as a whole, it is clear that a capital improvement adjustment is a rent adjustment, not a fee. We conclude that Civil Code section 798.31 does not preempt the ordinance.

*Public Policy.*

Residents contend that any ordinance that permits rent to be fragmented into a number of separate assessments is void as contrary to public policy. The residents note that in *People* v. *Mel Mack Co.* (1975) 53 Cal.App.3d 621, 627-628 [126 Cal.Rptr. 505], the court stated that when Civil Code sections 789.7 and 789.8 are read together, they "clearly reflect an intent on the part of the Legislature to strictly limit the ability of park management to collect fees from *any* source except, of course, for services performed." (Original italics.)

Residents concede that a general discretionary rent increase is valid, but a separate charge based on only one factor is not. Residents make a distinction without a difference. So long as an increase is a rent increase, rather than a

separate fee or assessment, it is permissible under the Mobilehome Residency Law. The increase here, under the ordinance, was a rent increase and therefore permissible.

*Award of Interest on Capital Improvement Expense.*

 Residents next contend the Mobilehome Residency Law does not permit the award of interest in connection with a capital improvement rent increase. Residents note the Mobilehome Residency Law specifically lists the charges and fees that may be charged to mobilehome owners (see, e.g., Civ. Code, §§ 798.33 [fees for pet services or facilities], 798.34 [fees for guests]) and also specifically lists charges and fees that are impermissible (see, e.g., Civ. Code, §§ 798.35 [fees based on number of members of immediate family of tenant], 798.36 [fees for enforcement of park rules and regulations], 798.72 [transfer fee for sale of mobilehome]). However, interest is not mentioned among the allowable charges and fees.

By way of analogy, we note that in *Palacio de Anza* v. *Palm Springs Rent Review Com.* (1989) 209 Cal.App.3d 116 [257 Cal.Rptr. 121], this court impliedly approved the inclusion of purchase price debt service expense (i.e., interest) as part of the formula under which hardship rent increases were to be computed. (However, the City of Palm Springs later repealed that portion of its rent control ordinance.)

Nothing in the Mobilehome Residency Law prohibits basing rent adjustments on interest expense. Rather, the statutory scheme permits consideration of a broad range of factors so as to allow a park owner a just and reasonable return. (See, e.g., *Oceanside Mobilehome Park Owners' Assn.* v. *City of Oceanside* (1984) 157 Cal.App.3d 887 [204 Cal.Rptr. 239].) The Commission did not abuse its discretion in including interest as part of its rent increase.

*Application of Section 5.0007 of the Rules.*

 Residents contend that the Commission erred under the terms of section 5.0007 of the rules in awarding a capital improvement rent increase. Section 5.0007 of the rules[4] provides that a capital improvement rent increase may be granted for improvements completed between April 1, 1988,

---

[4]Section 5.0007 of the rules states, "This Chapter shall apply to all Capital Improvements performed after the adoption of the Ordinance. A capital improvement increase may be granted if it was completed between April 1, 1988 and the adoption of the moratorium on rent increases . . . provided that:

and the adoption of the rent increase moratorium only if "[n]o rent increase has been charged based upon or including the cost of the capital improvement."

Here, the capital improvement was completed in 1989. It was undisputed that a rent increase of $6 per space per month was collected for the work in 1989 and 1990. Thus, residents argue, the commission was prohibited from granting a capital improvement rent increase for the work.

The Commission interpreted rule 5.0007 to preclude the double recovery of the expenses of a capital improvement. Thus, in applying rule 5.0007, the Commission deducted the amount of rent that was actually collected through previous rent increases in 1989 and 1990 from the total expense. The Commission granted a rent increase based only on the remainder.

■ When an administrative agency is charged with administering a statute or ordinance, the administrative agency's interpretation of the applicable law is given great deference by the reviewing court. (*Cole* v. *City of Oakland Residential Rent Arbitration Bd.* (1992) 3 Cal.App.4th 693, 697-698 [4 Cal.Rptr.2d 593].) The administrative agency's construction of the law need not be the only reasonable interpretation (*Department of Health Services* v. *Superior Court* (1991) 232 Cal.App.3d 776, 782 [283 Cal.Rptr. 546]), and its application of the law will be upheld unless it is arbitrary, capricious, lacks any rational basis (*Wilkinson* v. *Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 491, 501 [138 Cal.Rptr. 696, 564 P.2d 848]), or disregards the plain meaning of the ordinance (*Indian Springs, Ltd.* v. *Palm Desert Rent Review Bd.* (1987) 193 Cal.App.3d 127, 135 [238 Cal.Rptr. 112]). ■ Here, the Commission's interpretation of the rule is rational. The Commission's interpretation, although not mandated by the language used in the ordinance, is nonetheless consistent with the language used in the ordinance. We conclude the Commission did not abuse its discretion.

*Standard of Review.*

■ Residents contend the trial court erred in applying the substantial evidence test rather than the independent judgment test in determining whether statutory rights of the residents had been infringed.

The interpretation of a statute is a question of law. (*Karrin* v. *Ocean-Aire Mobile Home Estates, supra,* 1 Cal.App.4th at p. 1070.) Residents interpret

---

"A. No rent increase has been charged based upon or including the cost of the capital improvement; and

"B. The improvement meets the definition of capital improvements as set forth in Section 2(B) of the Ordinance."

the statutory scheme as precluding any additional fee based on a capital improvement. However, as we have discussed above, the statutory scheme does not preclude a rent adjustment based on a capital improvement. The City's ordinance provides for a rent adjustment rather than for an impermissible assessment. Thus, we conclude residents are mistaken in their interpretation of the law.

The remaining question, the propriety of the Commission's approval of a rent increase, is a question of fact subject to review under the substantial evidence standard. Residents do not challenge the sufficiency of the evidence to support the Commission's decision.

*Attorney Fee Award.*

Civil Code section 798.85 states, "In any action arising out of the provisions of this chapter the prevailing party shall be entitled to reasonable attorney's fees and costs. A party shall be deemed a prevailing party for the purposes of this section if the judgment is rendered in his or her favor or where the litigation is dismissed in his or her favor prior to or during the trial, unless the parties otherwise agree in the settlement or compromise."

■ Residents contend that Mouchawar, a real party in interest, was not a prevailing party under Civil Code section 798.85. Mouchawar contends this court lacks jurisdiction to review the award of attorney fees because residents failed to file a timely notice of appeal to challenge that award.

Judgment was entered on March 23, 1993. The judgment did not award attorney fees or costs to Mouchawar. Residents filed a notice of appeal from the judgment on May 18, 1993. On May 26, 1993, the trial court entered an order awarding Mouchawar $9,000 in attorney fees. Although the order was separately appealable (Code Civ. Proc., § 904.1, subd. (b); *City of Los Angeles* v. *Aalbers* (1977) 67 Cal.App.3d 80, 82-83 [136 Cal.Rptr. 396]), residents did not file a notice of appeal from the postjudgment order granting attorney fees.

This is not a case in which the judgment included an award of fees with the amount to be determined in the future. (See *Grant* v. *List & Lathrop* (1992) 2 Cal.App.4th 993, 996-997 [3 Cal.Rptr.2d 654].) Rather, the judgment states only that *residents'* request for fees was denied. Thus, the notice of appeal did not challenge the award of fees to Mouchawar, and Mouchawar was not on notice that residents were seeking review of the award. The award of attorney fees to Mouchawar is a collateral matter unencompassed by the notice of appeal. We conclude we have no jurisdiction to review

the award of attorney fees to Mouchawar. (*Fish* v. *Guevara* (1993) 12 Cal.App.4th 142, 147-148 [15 Cal.Rptr.2d 329].)

### DISPOSITION

The judgment is affirmed. Each party shall bear its own costs on appeal.

Hollenhorst, J., and McKinster, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 22, 1994. Baxter, J., did not participate therein. Mosk, J., was of the opinion that the petition should be granted.