[No. C016304. Third Dist. Sept. 28, 1994.]

LELAND L. DILLS et al., Plaintiffs and Appellants, v.
REDWOODS ASSOCIATES, LTD., et al., Defendants and Respondents.

**COUNSEL**

Crosby & Stanton, Bruce E. Stanton and Richard N. Bates for Plaintiffs and Appellants.

Swanson and Gieser, C. Brent Swanson and Jim P. Mahacek for Defendants and Respondents.

**OPINION**

**DAVIS, J.**—At issue in this case is whether a mobilehome park owner may charge resident mobilehome owners for the cost of capital improvements as a variable-expense item supplemental to a fixed base rent. We hold that nothing in Civil Code section 798.31 (undesignated section references will be to this code) precludes this practice, capital expenses being a traditional component of rent and there being nothing in the statutory language expressing a concern with the way rent itself is structured. Consequently, we shall affirm the judgment of dismissal entered after the trial court sustained the defendants' demurrer.

## I. BACKGROUND

■ As we are reviewing a demurrer, we assume the truth of all well-pled facts in the complaint. (*Knickerbocker* v. *City of Stockton* (1988) 199 Cal.App.3d 235, 238 [244 Cal.Rptr. 764].) The pertinent allegations are few.

Plaintiffs Leland L. Dills and Paul Stuart each own mobilehomes located within a mobilehome park owned and operated by the several defendants (whom we shall collectively designate as Redwoods). Plaintiff Dills has resided in the park since 1984, plaintiff Stuart since 1976. On May 1, 1990, plaintiff Dills executed a five-year lease agreement offered by Redwoods. Plaintiff Stuart declined to sign a lease, but since May 1990 has been paying rent on a month-to-month basis which is equal to that calculated under the terms of the written lease.

The lease contains the following provisions for rent. "Base rent" is a specific amount payable on the first of each month. On each subsequent anniversary date of the lease, base rent is to be increased by a "base rent adjustment" consisting of four components. The rent first may be increased by a factor equal to 90 percent of the annual increase in the Consumer Price Index. Both property taxes and any "governmental required services" (e.g., water, sewer, and garbage collection) can then be added to the base rent when such charges exceed specified threshold levels. The final component is the subject of this dispute.[1] It is intended to recover the cost of capital expenditures, in particular "capital additions, improvements, compulsory expenditures, betterments, and the deductible with respect to any insurable loss or major repairs . . . to existing capital facilities." These capital expenditures are to be amortized over a period of 5 years, incurring an "imputed interest" at a rate of 2 percent above the prime rate, and are to be allocated evenly among the 278 mobilehome spaces in the park. "The pass-through of these expenditures will furthermore be held as a component separate from the base rent and will drop off completely after the 60th payment of the monthly charge." This pass-through provision applies to expenditures exceeding $25,000. Residents are provided an opportunity to vote to approve or disapprove "noncompulsory expenditures," but "compulsory expenditures" are not subject to resident approval. The agreement defines "compulsory expenditures" as those which are "either mandated by government

---

[1]At oral argument, the plaintiffs attempted to raise the propriety of the other components of the base rent adjustment under the Mobilehome Residency Law. Other than a passing reference in their appellate briefs to these other issues, they presented no argument or authority. We will not develop the appellants' arguments for them, and therefore decline to reach the issues relating to these other fees. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 479, p. 469; *In re Marriage of Schroeder* (1987) 192 Cal.App.3d 1154, 1164 [238 Cal.Rptr. 12].)

decrees" or items which "if left unrepaired would adversely affect the serviceability and/or habitability of the park, i.e. roads, clubhouse roof, etc."

Plaintiffs allege that beginning in May 1990, Redwoods began adding a $15 charge to their monthly rent bills to cover the cost of repairs to roads within the mobilehome park. This charge was described as their prorated share of $172,000, amortized over 60 months at 12 percent interest. (The plaintiffs do not assert Redwoods improperly calculated this sum.) Believing this charge to be a violation of section 798.31, plaintiffs filed the instant action seeking declaratory and injunctive relief, as well as compensatory damages.

## II. Discussion

There is but one decision construing the meaning of section 798.31[2] as applied to the pass-through of capital expenditures. In *Karrin* v. *Ocean-Aire Mobile Home Estates* (1991) 1 Cal.App.4th 1066 [2 Cal.Rptr.2d 581], a tenant challenged a monthly capital assessment for road improvements. (*Id.* at p. 1068.) The City of Oxnard had enacted a rent control ordinance permitting park owners to "segregate and separately bill the actual cost for a capital improvement for as long as the owner amortizes the capital improvement." (*Ibid.*) This rent control ordinance defined rent as being exclusive of pass-throughs for capital expenditures. (*Id.* at pp. 1068-1069.) A pass-through could be imposed only with the approval of the majority of the residents of a mobilehome park. (*Id.* at p. 1069.) The court concluded that to the extent the ordinance purported to authorize the pass-through, it was invalid as conflicting with section 798.31. (1 Cal.4th at p. 1071.) The court also held that the pass-through itself was prohibited by the statute. (*Id.* at p. 1073.)

The court pointed out that the statute allows charges only for rent, utilities, and incidental reasonable charges for services actually rendered. (1 Cal.App.4th at p. 1070.) "The Legislature intended 'to [limit strictly] the ability of park management to collect fees from any source except . . . for services performed.'" (*Id.* at p. 1071.) The assessment at issue was neither a charge for utilities nor for services rendered. (*Id.* at p. 1073.) The court noted both that the ordinance specifically distinguished the capital assessment pass-through from rent (*id.* at p. 1071) and that the park owner "sought this charge as a capital improvement assessment, not as rent. [Defendant] has not billed this charge as rent, but as an assessment payable separately on a

---

[2]Part of the Mobilehome Residency Law (§ 798 et seq.), section 798.31 provides in pertinent part, "A homeowner shall not be charged a fee for other than rent, utilities, and incidental reasonable charges for services actually rendered."

monthly basis over a 19-year period specifically to pay for repairing internal roadways" (*id.* at p. 1073).[3]

■ In the case at bar, the trial court found the capital expenditure pass-through provision valid, relying upon the fact the lease agreement characterized the capital improvement charge as part of the "annual rent adjustment" component of rent. It concluded the present case is distinguishable from *Karrin* because the plaintiffs had advance notice of the components the park owners intended to include in their calculation of rent. Reviewing this question of law de novo (*Karrin* v. *Ocean-Aire Mobile Home Estates, supra,* 1 Cal.App.4th at p. 1070), we agree the breakdown of rent into separately calculated base-rent and capital-improvement components does not invalidate the capital component.

The plaintiffs, as they must, concede that it is a park owner's right to charge rent at whatever level desired which the market will bear. (*Gregory* v. *City of San Juan Capistrano* (1983) 142 Cal.App.3d 72, 85 [191 Cal.Rptr. 47].) However, plaintiffs assert that section 798.31 provides park residents with protections limiting the manner in which rent may be calculated. Redwoods argues that so long as the rental agreement labels the charge as a component of rent, it is outside section 798.31's ambit. Both parties have cited authority that either "rent is what you call it" or "rent is defined by function." (E.g., *Cal-American Income Property Fund IV* v. *Ho* (1984) 161 Cal.App.3d 583, 586 [207 Cal.Rptr. 532] [unlawful detainer action; certain charges that could have been charged as "rent" categorized otherwise in lease, so not rent]; *Granberry* v. *Islay Investments* (1984) 161 Cal.App.3d 382, 390-391 [207 Cal.Rptr. 652] [in distinguishing security deposits from rent, "merely calling an item 'rent' does not make it so"]; cf. Shakespeare, Romeo and Juliet, act II, scene 2, lines 43-44 [roses].) However, these cases were not decided in the specific context of section 798.31, or even the Mobilehome Residency Law generally, so we need not pursue them.

We begin with the historical context of the current statute. When first enacted in 1971, the predecessor to section 798.31 simply provided, "The owner of a mobilehome park . . . shall not charge any fees to tenants other than charges for rent, utilities, or incidental reasonable service charges." (Stats. 1971, ch. 1143, § 2, p. 2165.) In 1975, the Legislature amended the statute, prescribing that any service charges be for services actually rendered, that the rental agreement disclose any services (and the charges associated with them), and that no services and fees could be assessed

---

[3]The court observed that the rent control ordinance provided park owners with the option of directly seeking a rent increase from the rent control board to cover the cost of an improvement. (1 Cal.App.4th at p. 1072.)

against current tenants without notice of 60 days. The Legislature also added a proscription against service charges for pets, short-term guests, per-person charges (if the persons are immediate family members), and enforcement of park rules. (Stats. 1975, ch. 613, § 1, pp. 1342-1343; *id.*, ch. 1092, § 2, pp. 2659-2660.) In 1978, the Legislature transferred the substance of the former statute to current section 789.15, subdivision (f)—governing the contents of rental agreements—and sections 798.31 through 798.36 (the article concerning fees and charges) "without substantive change." (4 Stats. 1978 (Reg. Sess.) Summary Dig., p. 280.)

As this progression demonstrates, the focus of the Legislature was the prevention of a proliferation of service charges above and beyond rent or utilities. The unscrupulous park owner could lure mobilehome owners with a competitive rent, then "nickle-and-dime" this relatively captive market[4] with an array of unanticipated charges which when aggregated could render the tenant unable to afford to continue the tenancy. The Legislature first ensured that the charges must be for services actually rendered; it then required advance disclosure of the existence and amount of service charges in the rental agreement, proscribed particular fees it found odious, and required a 60-day notice period for any new charges for current tenants. Neither the original enactment nor its amendments signaled in any way a concern with limiting a mobilehome park owner's recovery of capital expenditures. Since capital expenditures have otherwise been a traditionally recoverable component of rent, even under rent control ordinances, there is nothing in the statute which precludes a park owner from structuring its rent in the manner of the defendants.[5]

Structuring rent in this manner actually inures to the benefit of tenants. Otherwise an owner, forced to guess at future capital costs over the course of a lease, would set a combined rent high enough to recover any *possible* expenditures (or would be required to impose a substantial rent hike to recover retroactively for past expenditures). With a variable component, the tenants are required to pay only for actual costs as incurred.

Although *Karrin* is more directly concerned with whether a local ordinance is preempted by section 798.31, the inevitable implication of its ruling is that any effort to recover capital costs explicitly as opposed to an implicit component of rent run afoul of the statute. In light of our analysis above, we respectfully part company from *Karrin* to the extent it so holds.

---

[4]As the legislative findings in section 798.55 note, the unique physical characteristics of mobilehomes render them relatively immobile and thus requiring the special statutory protections of the Mobilehome Residency Law to protect against actual or constructive evictions.

[5]The converse of this holding, of course, is that park owners cannot attempt to avoid regulation by recharacterizing various *service charges*—with which the Legislature has in fact expressed concern in section 798.31 and its related statutes—as rent.

The judgment is affirmed.

Puglia, P. J., and Raye, J., concurred.

Appellants' petition for review by the Supreme Court was denied December 22, 1994. Baxter, J., did not participate therein. Mosk, J., was of the opinion that the petition should be granted.