[No. B074103. Second Dist., Div. Four. July 10, 1995.]

LOUIE VANCE et al., Plaintiffs and Appellants, v.
VILLA PARK MOBILEHOME ESTATES et al., Defendants and
Respondents.

## COUNSEL

Perona, Langer & Beck, Ronald Beck and Ellen R. Serbin for Plaintiffs and Appellants.

Swanson & Gieser, Jim P. Mahacek and C. Brent Swanson for Defendants and Respondents.

## OPINION

**VOGEL (C. S.), J.**—Plaintiffs and appellants Louie Vance et al. are mobilehome owners renting spaces in a mobilehome park owned and operated by defendants and respondents Villa Park Mobilehome Estates et al. in the City of Long Beach. Appellants brought this action for declaratory relief and an accounting, alleging that certain provisions of their leases specifying formulas for future rent increases are in reality prohibited "fees" under the

Mobilehome Residency Law (Civ. Code, § 798 et seq.)[1] and are also uncon-scionable. The trial court entered judgment against appellants after sustain-ing demurrers without leave to amend to a portion of appellants' first amended complaint and to appellants' second amended complaint.

The parties agree there is no local rent control ordinance.    ■    Although the state Mobilehome Residency Law regulates in detail the relations be-tween the owners of mobilehome parks and their residents, it is not a rent control law. (*Gregory* v. *City of San Juan Capistrano* (1983) 142 Cal.App.3d 72, 79-82, 85 [191 Cal.Rptr. 47].) Although the act prohibits certain fees (§§ 798.31, 798.72), it does not restrict the amount of rent which may be charged. Appellants' case is based on the argument that the rent provisions in their leases are in reality disguised fees of the type prohibited in sections 798.31 and 798.72.    ■    Interpretation of the written leases in light of the statute presents a question of law which we review independently of the trial court's conclusion. (*Dills* v. *Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890 [33 Cal.Rptr.2d 838]; *Karrin* v. *Ocean-Aire Mobile Home Estates* (1991) 1 Cal.App.4th 1066, 1070 [2 Cal.Rptr.2d 581]; *United States Elevator Corp.* v. *Pacific Investment Co.* (1994) 30 Cal.App.4th 122, 125 [35 Cal.Rptr.2d 382].) Finding no merit to appellants' contentions, we affirm.

## THE LEASES

Some of the appellants signed the lease form shown by exhibit A to the complaint; others signed a lease form shown by exhibit B. They are essen-tially the same. At question are article 3 of the leases, which describes the beginning rent and the formula for rent increases, and article 8, which describes an additional rent increase upon sale or transfer of a mobilehome and assignment of the lease.

### Rent

The leases are for five years. Paragraph 3.1 states the "beginning rent" and states that on each annual anniversary date "your rent will increase" by the annual percentage increase in the Consumer Price Index and by the "pass-throughs" described in paragraph 3.2. (In form B there is an additional 10 percent increase in the 13th month.)

### Pass-throughs

Form A states in paragraph 3.2, "PASS-THROUGHS: On June 1, 1988 and each subsequent Anniversary Date of this Lease, the then monthly rent shall

---

[1]All statutory references are to the Civil Code unless otherwise indicated.

also increase by the pass-throughs noted below: [¶] A. GOVERNMENT SER-VICES AND IMPROVEMENTS, PROPERTY TAXES AND INSURANCES: Increases or decreases in the cost of the governmental services and improvements, property taxes and insurance will also be used to increase or decrease the rent."

Form B states in paragraph 3.2, "PASS-THROUGHS: Effective June 1, 1990, and on each subsequent Pass-Through Anniversary Date, of this Lease, the then monthly rent shall also increase by the pass-throughs noted below. All pass-throughs are part of your rent and are only referred to as 'pass-throughs' as a convenient way of identifying and explaining how a portion of your rent increase will be calculated each year. [¶] A. GOVERNMENT SERVICES AND IMPROVEMENTS, PROPERTY TAXES, AND INSURANCE: Increases or decreases in the cost of governmental services and improvements, property taxes, and insurance will also be used to increase or decrease rent."

Both leases provide that if the cost of government services or improvements or insurance changed by less than the change in the Consumer Price Index, no amount would be added or subtracted for these pass-throughs, and that if property taxes changed by no more than 2 percent, no amount would be added or subtracted for that pass-through. Other paragraphs define government services and improvements, property taxes, and insurance and describe how the increased or decreased costs will be calculated.

### Rent Increase Upon Transfer

Article 8 of the leases requires that upon sale or transfer of a mobilehome, the transferee must accept an assignment of the lease. Paragraph 8.1 of both forms provides: "You may sell/transfer your mobilehome per your and our rights and obligations under this Lease and the law as it may be amended. You must, however, immediately notify us in writing of your intent to sell/transfer your mobilehome. You agree, however, that you will not sell or otherwise transfer your mobilehome to anyone who does not agree to accept an assignment of this Lease. (The assignment must be executed by the buyer/transferee, subject to our approval, prior to establishing tenancy and the 72-hour right of rescission provided for in *Civil Code* Section 798.17 will not apply to the buyer-transferee.) The requirements of this Lease and paragraph 8 will apply even if you sell or transfer only a portion of your interest in your mobilehome."

Paragraph 8.3 of form A states, "Upon the sale/transfer of your mobilehome to someone other than your spouse, children or parents, the rent for your Space will be increased an additional 10% at the time of the sale/transfer and will remain subject to the CPI adjustments, pass-throughs and

other terms of this Lease. This rent increase provision may only be applied a maximum of 2 times during the initial 60 month term of this Lease and 2 times during the extended term . . . of this Lease."

Paragraph 8.2 of form B states, "Upon the sale/transfer of your mobilehome, the rent we are then charging will increase by an additional 10%. The rent increase (including pass-throughs) in paragraph 3.2 and elsewhere in this Agreement will also continue to apply to the rent the new resident pays." (However, the new tenant will get a new anniversary date, so that the new tenant has one year before suffering the pass-through rent increases.)

### MOBILEHOME RESIDENCY LAW

Section 798.31 states, "A homeowner shall not be charged a fee for other than rent, utilities, and incidental reasonable charges for services actually rendered. . . ."

Other sections which follow contain specific prohibitions of fees for: services not listed in the rental agreement (§ 798.32), pets (§ 798.33), guests (§ 798.34), number of members in family (§ 798.35), rule enforcement (§ 798.36), entry, installation, hookup or landscaping (§ 798.37), and statutory penalties imposed on management (§ 798.42).

Section 798.72 provides, "(a) *The management shall not charge* a homeowner, an heir, joint tenant, or personal representative of the estate who gains ownership of a mobilehome in the mobilehome park through the death of the owner of the mobilehome who was a homeowner at the time of his or her death, or the agent of any such person *a transfer or selling fee as a condition of a sale of his mobilehome* within a park *unless the management performs a service in the sale*. The management shall not perform any such service in connection with the sale unless so requested, in writing, by the homeowner, an heir, joint tenant, or personal representative of the estate who gains ownership of a mobilehome in the mobilehome park through the death of the owner of the mobilehome who was a homeowner at the time of his or her death, or the agent of any such person. [¶] (b) *The management shall not charge a prospective homeowner or his or her agent, upon purchase of a mobilehome, a fee as a condition of approval for residency in a park unless the management performs a specific service in the sale*. The management shall not impose a fee, other than for a credit check in accordance with subdivision (b) of Section 798.74, for an interview of a prospective homeowner." (Italics added.)

## DISCUSSION

### *Pass-throughs*

█ Appellants alleged in the first cause of action of their first amended complaint that the pass-throughs are "not rent" within the meaning of section 798.31, and therefore cannot be charged at all, because section 798.31 prohibits any fee other than rent, utilities, and incidental reasonable charges for services actually rendered. We find no merit to this argument.[2]

As explicitly described in form B's paragraph 3.2, "pass-through" here was used as a convenient label to describe increased operating costs. In the absence of rent control, the parties may agree on future rent increases based on increased operating expenses. In the leases, the pass-throughs operate as rent, not as fees.

In *Dills* v. *Redwoods Associates, Ltd., supra,* 28 Cal.App.4th 888, the mobilehome lease provided that the base rent be adjusted for capital expenditures, as amortized. Like appellants, the tenants argued that the increased charge violated section 798.31. The court held that nothing in the Mobilehome Residency Law precluded the landlord from structuring rent in this manner. Reviewing the legislation in section 798.31 and its related sections, the court commented, "As this progression demonstrates, the focus of the Legislature was the prevention of a proliferation of service charges above and beyond rent or utilities. The unscrupulous park owner could lure mobilehome owners with a competitive rent, then 'nickle-and-dime' this relatively captive market with an array of unanticipated charges which when aggregated could render the tenant unable to afford to continue the tenancy. The Legislature first ensured that the charges must be for services actually rendered; it then required advance disclosure of the existence and amount of service charges in the rental agreement, proscribed particular fees it found odious, and required a 60-day notice period for any new charges for current tenants. Neither the original enactment nor its amendments signaled in any way a concern with limiting a mobilehome park owner's recovery of capital

---

[2]The term "rent" is not specifically defined in the Mobilehome Residency Law. In the Mobilehome Parks Act, rent is defined as "money or other consideration given for the right of use, possession, and occupation of property." (Health & Saf. Code, § 18216.)

The Mobilehome Residency Law contains the following additional definitions: " 'Rental agreement' is an agreement between the management and the homeowner establishing the terms and conditions of a park tenancy. A lease is a rental agreement." (§ 798.8.) " 'Homeowner' is a person who has a tenancy in a mobilehome park under a rental agreement." (§ 798.9.) " 'Tenancy' is the right of a homeowner to the use of a site within a mobilehome park on which to locate, maintain, and occupy a mobilehome, site improvements, and accessory structures for human habitation, including the use of the services and facilities of the park." (§ 798.12.)

expenditures. Since capital expenditures have otherwise been a traditionally recoverable component of rent, even under rent control ordinances, there is nothing in the statute which precludes a park owner from structuring its rent in the manner of the defendants." (28 Cal.App.4th at p. 893, fns. omitted.)

Here, as in *Dills*, nothing in the Mobilehome Residency Law prohibits the parties from agreeing that rent be increased to reflect increased expenses for the designated services, traditionally recoverable as a component of rent.[3]

### *Transfer*

In the first cause of action of their second amended complaint, appellants alleged that the increase in rent imposed upon transfer of a mobilehome in paragraphs 8.3 of form A and 8.2 of form B "is a transfer or selling fee within the confines of section 798.72 of the Civil Code and cannot be charged to plaintiffs or plaintiffs' prospective or actual successors-in-interest."[4] The legislative background of the predecessor statute to this section was discussed in *People* v. *Mel Mack Co.* (1975) 53 Cal.App.3d 621, 626 [126 Cal.Rptr. 505]. Prior to statutory regulation, ". . . it was the practice of some mobile home park owners to require prospective tenants desiring to move into a park to pay a fee to the park owner (an entrance fee); it was also customary in some parks to charge a fee when tenants sold their mobile homes and left them in the park (a transfer fee); the transfer fee had to be paid by the seller or the buyer." (*Ibid.*) The Legislature prohibited this practice. *Mel Mack* specifically held that the prohibition extended to collecting a fee from the seller's broker, unless the park operator performed services in connection with the sale. (*Id.* at pp. 627-628.) Currently, section 798.72 likewise prohibits park management from requiring a transfer or selling fee as a condition of sale (subd. (a)), or charging a fee as a condition of approval of the new tenant (subd. (b)), unless management performs a service in connection with the sale.

---

[3]*Karrin* v. *Ocean Aire Mobile Home Estates*, *supra*, 1 Cal.App.4th 1066, cited by appellants, is distinguishable. There, a *rent control ordinance expressly provided* that assessments for capital improvements were *not* part of monthly rent. (*Id.* at pp. 1068-1069.) Under the circumstances, the court was compelled to conclude the assessment was not rent within the meaning of section 798.31. (1 Cal.App.4th at pp. 1071-1073.) Here, unlike the ordinance in *Karrin*, the leases expressly treat the pass-throughs as rent. *Karrin* was distinguished and not followed in *Dills* (28 Cal.App.4th at pp. 892 & fn. 3, 893) and in *Robinson* v. *City of Yucaipa* (1994) 28 Cal.App.4th 1506, 1514 [34 Cal.Rptr.2d 291]. In *Robinson*, involving a different rent control ordinance, the court concluded, "Reading the ordinance as a whole, it is clear that a capital improvement adjustment is a rent adjustment, not a fee," and not in conflict with section 798.31. (28 Cal.App.4th at p. 1514.)

[4]Respondents suggest appellants have no "standing" because the rent is charged to the transferee. Appellants alleged standing by claiming that this provision made it difficult to sell their homes. This was sufficient to show appellants had "sufficient interest in the subject matter of the dispute to press their case with vigor." (See *Common Cause* v. *Board of Supervisors* (1989) 49 Cal.3d 432, 439 [261 Cal.Rptr. 574, 777 P.2d 610].)

Appellants' contention that the rent increase upon transfer is a fee within the meaning of section 798.72 or *Mel Mack* lacks merit. Although not specifically defined in the Mobilehome Residency Law, "rent" has a settled legal meaning. (Fn. 2, *ante*.) ██ ██ Rent is "the consideration paid by the tenant for the use, possession, and enjoyment of the demised premises. 'Rent' does not include other payments of money by a tenant for other purposes . . . ." (6 Miller & Starr, Cal. Real Estate (2d ed. 1989) Landlord and Tenant, § 18:63, p. 141, fns. omitted.) ██ ██ A fee, under the Mobilehome Residency Law, is a specific charge imposed for incidental benefits and services, or impermissibly charged without giving incidental benefits or services or without advance disclosure in the rental agreement. Here, as with the pass-through rent increases, discussed *ante*, the increased rent is paid by the new tenant as monthly consideration for the use and occupation of the mobilehome lot.

The Mobilehome Residency Law clearly distinguishes between rent and fees. It regulates fees but not rent. A rental agreement must state "[t]he term of the tenancy and the *rent* therefor." (§ 798.15, subd. (a), italics added.) Also, it must separately describe the services to be provided during the term of the tenancy and the "*fees*, if any, to be charged for those services," and it must include a statement that management may impose "a reasonable *fee* for services" relating to maintenance if the homeowner fails to maintain the leased premises in accordance with the rules and regulations of the park. (§ 798.15, subds. (f) and (g), italics added.) Section 798.31 provides, "A homeowner shall not be charged a *fee* other than *rent*, utilities, and incidental reasonable charges for services actually rendered." (Italics added.) It is significant that the term "rent" is a separately referenced noun, underscoring the distinction between rent and any other economic incident of tenancy. When a statute distinguishes different words in the same connection, it is presumed the Legislature intended different meanings and effect. (*Charles S.* v. *Board of Education* (1971) 20 Cal.App.3d 83, 95 [97 Cal.Rptr. 422]; *Gonzales & Co.* v. *Department of Alcoholic Bev. Control* (1984) 151 Cal.App.3d 172, 178-179 [198 Cal.Rptr. 479].) Other sections that conditionally allow or prohibit fees for pets, guests, and the cost of management (§§ 798.33, 798.34, and 798.42) further illuminate the distinction between rent and fees within the context of the Mobilehome Residency Law. The fees prohibited or restricted under the act are for services and benefits ancillary to the homeowner's primary right of occupancy. The transfer and selling fees prohibited by section 798.72 are simply a charge imposed without any consideration and bear no relationship to the homeowner's right of use and possession. Nothing in the background of section 798.72 as described in *People* v. *Mel Mack Co.*, *supra*, 53 Cal.App.3d at page 626, indicates a legislative concern with the rent to be charged the new tenant for the use and

occupation of the premises. (Cf. *Dills* v. *Redwoods Associates, Ltd., supra,* 28 Cal.App.4th at p. 893 [nothing in background of prohibition of certain fees in §§ 798.31 to 798.36 indicated intent to regulate recovery of capital improvement expenses by increased rent].)

No provision of the Mobilehome Residency Law precludes a homeowner and a park operator from agreeing to a rental rate that escalates incrementally over the term of the lease. Section 798.16 provides, "[t]he rental agreement may include such other provisions permitted by law, but need not include specific language contained in state or local laws not a part of this chapter." In other words, what is not prohibited is permitted. The act contemplates by its terms that rent is controlled by contract and may be determined by any formula acceptable to the parties to the rental agreement. The fact that the increase in rent is triggered by the sale or transfer of the mobilehome does not change the result. If the parties may permissibly agree that the rent will increase upon certain dates, or in order to pass through certain increased operating costs, they may also permissibly agree that the rent will increase upon transfer and assignment of the lease. The homeowner may agree to conditions binding the successor in interest over the remaining term of the assignable lease. Fixing the rate of increase in advance gives desirable certainty to both the homeowner and the park operator. This lease gives the homeowner another advantage: the ability to terminate the lease upon sale of the mobilehome so as to release the homeowner of all further obligations under the lease. The homeowner is free to weigh the consequences of the rental terms on the future saleability of the mobilehome and future value of the assignable lease.

In summary, the Mobilehome Residency Law clearly distinguishes between rent and fees, and no provision of the act prohibits a negotiated escalating rental rate over the term of the rental agreement. The fact that the increase is triggered by the sale of the mobilehome and assignment of the lease is of no consequence. Appellants were free to negotiate the rental rate for the term of the lease according to any formula acceptable to them and the respondents. Nothing restricted their right to negotiate the rental rate for their successors in interest. As a matter of law, the increase in rent triggered by the transfer and sale of their mobilehome pursuant to the terms of the lease is not a transfer or selling fee within the meaning of section 798.72.

### *Unconscionability*

In the second cause of action of their second amended complaint, appellants alleged, independently of the Mobilehome Residency Law, that the pass-through rent increases in paragraphs 3.1 and 3.2 of the leases are

"unconscionable, illegal and unenforceable, in that there was unequal bargaining power between plaintiffs and defendants when they negotiated the Leases, requiring plaintiffs to take it or leave it and defendants would not negotiate any of the terms. Further, said lease provisions seek to charge plaintiffs money for their tenancy, including 'pass-throughs,' that is unreasonably favorable to defendants in that said money is grossly disproportionate to the defendants' costs in operating the Park, and seek to charge plaintiffs for the Park's operating costs in maintaining the Park which defendants have the legal duty to pay for."[5] Appellants sought a judicial declaration that the rents charged pursuant to the leases are unconscionable and declaring what rents can be charged in the future.

█▌ █  Section 1670.5 (not part of the Mobilehome Residency Law) authorizes a court to refuse to enforce a contract or a clause of a contract which the court finds unconscionable at the time it was made.[6] Unconscionability has both a procedural and a substantive element. The procedural element focuses on two factors, (1) oppression, arising from inequality of bargaining power and the absence of real negotiation or a meaningful choice, and (2) surprise, resulting from hiding the disputed term in a prolix document. The substantive element focuses on the disputed term being overly harsh or one-sided, with no justification for it at the time of the agreement. (*A & M Produce Co.* v. *FMC Corp.* (1982) 135 Cal.App.3d 473, 486-487 [186 Cal.Rptr. 114, 38 A.L.R.4th 1]; see also *Perdue* v. *Crocker National Bank* (1985) 38 Cal.3d 913, 925, & fn. 9 [216 Cal.Rptr. 345, 702 P.2d 503].)

█▌ █  Ordinarily on demurrer the allegations of the complaint must be accepted as true. But this does not apply to allegations expressing mere conclusions of law, or allegations contradicted by the exhibits to the complaint or by matters of which judicial notice may be taken. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 896, p. 337.) Unconscionability is a question of law for the court. (*Patterson* v. *ITT Consumer Financial Corp.* (1993) 14 Cal.App.4th 1659, 1663 [18 Cal.Rptr.2d 563].)

---

[5]The second cause of action also incorporated various allegations of the first cause of action concerning an extreme shortage of mobilehome park spaces, the high cost of actually moving a mobilehome, the difficulty of selling a mobilehome without providing a park space, the moderate income of many mobilehome owners, and a resulting disparity in bargaining power.

[6]Section 1670.5 provides: "(a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result. [¶] (b) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."

There is no allegation of the surprise factor of the procedural element. The leases plainly state in the article on rent that rent will be increased in the future based on the consumer price index and the pass-through expenses.

As to the oppression factor of the procedural element, we may take judicial notice, contrary to appellants' allegations of having no choice but to accept the terms, that appellants *did* have other options, under the Mobile-home Residency Law itself. Under sections 798.17 and 798.18, appellants had the right to reject the five-year lease with its future automatic increases and pass-throughs, and instead choose a twelve-month lease or a month-to-month tenancy. The leases contain express acknowledgements that appellants were offered these options.[7]

Without the procedural element of unconscionability, the mere allegation that price exceeds cost or fair value is not sufficient to establish substantive unconscionability. (*Perdue* v. *Crocker National Bank, supra*, 38 Cal.3d at p. 926.) The court will examine the justification for the price as of the time of the transaction. (*Id.* at pp. 926-927; *Carboni* v. *Arrospide* (1991) 2 Cal.App.4th 76, 84 [2 Cal.Rptr.2d 845].) As we have discussed, the pass-throughs in the leases are labels for increased operating costs. In the absence of rent control, the parties may provide for future rent increases based on increased expenses of operation. Appellants' allegation that the pass-throughs are "grossly disproportionate" to respondents' costs is contradicted by the terms of the leases and the very nature of the pass-throughs. The increases are based upon a combination of (1) the Consumer Price Index, which is a reasonable means to measure the increased cost of goods and services generally, and (2) actually experienced increased costs of the specified items: governmental charges and improvements, property tax and insurance. The rent increases bear a reasonable relation to costs. Appellants'

---

[7]Paragraph 32 of form A provides: "ACKNOWLEDGEMENT: You acknowledge that you have read, understood and received a copy of this Lease, together with a copy of the Park's Rules and Regulations, Mobilehome Residency Law and other documents referred to earlier in this Lease. If you are an existing resident of the Park, you acknowledge that we have also offered you the option of: a month-to-month rental agreement, a rental agreement having a term of 12 months, or a rental agreement having a term which is longer than a month-to-month tenancy but less than 12 months. You also acknowledge your understanding that you may elect to accept anyone of these three (3) other options and that this election is solely at your option. You agree that you have, however, voluntarily agreed to accept this Lease."

Paragraph 32 of form B provides: "ACKNOWLEDGEMENT: You acknowledge that you have read, understood, and received a copy of this Lease, together with a copy of the Park's Rules and Regulations, Mobilehome Residency Law, and other documents referred to earlier in this Lease. You also acknowledge that we offered you the option to sign another Lease which has the automatic renewal/extension provisions and does not provide for the additional 10% rent increase effective on the first day of the 13th month, as is found in this Lease. You have, however, voluntarily rejected this other lease offer and, instead, elected to accept this Lease instead."

allegation that the pass-throughs somehow unfairly shift to appellants the cost of operating the park "which defendants have the legal duty to pay for" is simply an erroneous conclusion of law. In the absence of rent control, it is untrue that the parties cannot provide for periodic increases in rent based on periodic increases in costs.

### DISPOSITION

The judgment is affirmed.

Epstein, Acting P. J., and Hastings, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 5, 1995. Baxter, J., did not participate therein. Mosk, J., was of the opinion that the petition should be granted.