Filed 10/4/13  P. v. Udeh CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B243930 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA082137) |
| v. | |
| PATRICK THOMAS UDEH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark S. Arnold, Judge.  Affirmed.

Tanya Dellaca, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Michael R. Johnsen and Esther P. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

Following a jury trial appellant was convicted of mayhem (Pen. Code, § 203) [1] and assault with a deadly weapon (§ 245, subd. (a)(1)). The jury also found he personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)). The trial court imposed and stayed a three-year sentence for mayhem pursuant to section 654 and imposed a total of six years in state prison for the assault and related enhancement.

Appellant contends the prosecutor committed misconduct during closing argument by arguing the jury should make inferences she knew were false. He also claims the trial court erred by: (a) failing to order a supplemental probation report for sentencing; and (b) denying probation or, in the alternative, declining to impose the low term. We affirm the judgment because neither the challenged comments by the prosecutor nor the failure to order a supplemental report were prejudicial, and the trial court acted within its discretion when imposing sentence.

## I. FACTS

### A. Prosecution Evidence

In the early morning hours of August 27, 2011, Lamar Johnson went to the King Henry club to pick up his girlfriend Natima Montgomery and give her a ride home. Montgomery was employed as an exotic dancer at the club. Appellant was Montgomery's former boyfriend and was also at the club. After whispering something in Montgomery's ear, appellant turned to Lamar, [2] punched him on the shoulder and called him a "bitch." An altercation ensued between appellant and Lamar. Both men were thrown out of the club by security.

Lamar went to his car and called his brother Antoine Johnson. The Johnson brothers met outside the club and drove to a nearby gas station to look for appellant and

_____

[1] All further statutory references are to the Penal Code.

[2] Lamar Johnson and his brother Antoine Johnson both testified at trial. Because they share the same surname we refer to them by their first names.

get a drink. While at the gas station, Lamar saw appellant. Lamar walked toward appellant and eventually stopped. Appellant reached into his vehicle and retrieved a taser gum. He "rushed" toward Lamar and lunged in an attempt to tase him. The two men fought and, when Antoine intervened, appellant attempted to tase Antoine as well.

Eventually the altercation ended. Antoine returned to his car and Lamar walked to pick up a shoe that had fallen off his foot. Appellant ran to his vehicle yelling: "Fuck you. This shit [is] not over. I'm going to kill you." Appellant entered the vehicle, turned it toward Lamar and "gunned it." Lamar was struck and his leg was severed. His leg was subsequently amputated. The jury watched a video of the altercation captured by a security camera at the gas station.

## B. Defense Evidence

A police officer who investigated the accident and reviewed the video footage opined appellant's vehicle traveled 42 feet from its parked position to where appellant was struck. After the vehicle struck Lamar it pushed him another 22 feet before pinning him against a metal post.

Appellant testified on his own behalf. Montgomery was his former girlfriend. On August 26, 2011, he and Montgomery were "working out [their] differences [and] getting back together." He had his arm around Montgomery's waist when he was punched in the face by Lamar. Appellant "never fought back." Security immediately ejected Lamar from the club. Once Lamar exited, appellant was asked to leave as well. Appellant left the club and proceeded to a nearby gas station.

Lamar and Antoine arrived at the gas station looking like they wanted to fight appellant. Appellant was afraid for his life. He ran to his vehicle and grabbed a taser. As Lamar approached, appellant lunged at him with the taser in self-defense. The taser did not affect appellant. He pleaded with the men but they punched him anyway and fractured his jaw.

3

Appellant heard Lamar say, "I got something for you." Someone made reference to a gun. Again fearing for his life, appellant entered his vehicle and pressed the accelerator in order to exit the gas station. Appellant accidently hit Lamar in the process. He attempted to assist Lamar by tying a tourniquet around his leg.

## II. DISCUSSION

### A. The Prosecutor's Comments

#### 1. Background

In addressing appellant's assertion that his jaw was broken, the prosecutor argued to the jury as follows: "Where's the doctor to say the defendant suffered these injuries, or medical records, anything? There is not a doctor. There is nobody here to support what he's saying. And what we know about this defendant is he likes to exaggerate. He likes to embellish, and he likes to sort of put himself in more of a I'm—this—great—guy setting. Where is a shred of evidence? [¶] He totally had injuries to his mouth. You can see on the photos. There's no lie. But he tried to talk to you about having his cheek bone broken in. Where is any evidence of that?" Defense counsel's objection on the ground of "inappropriate use of discovery" was overruled.

After the jury was instructed, the court and counsel discussed the prosecutor's remarks in more detail. The exchange amongst counsel and the court suggests there was a preliminary radiology report that was faxed to defense counsel indicating appellant's jaw was, in fact, fractured. Defense counsel and the prosecutor discussed the report at a pretrial conference whereupon the prosecutor indicated appellant's testimony could not adequately lay a foundation for the admissibility of the report. Defense counsel stated, "I didn't feel it was relevant to bring out all the documents regarding his medical records. [¶] But this is not something that my client is just saying. There's medical records that

[the prosecutor] is aware of that she received that . . . clearly shows he suffered a fractured jaw."

The trial court referenced the prosecutor's closing argument and indicated the prosecutor "should not have said that." Thus, the trial court called the jury back to the courtroom and instructed as follows: "[T]hings were stated during the argument . . . that I want you to disregard and ignore. [¶] Do not give any consideration to [the prosecutor's] remark that [appellant] . . . did not produce medical evidence to confirm that he was injured. Do not give that any consideration."

2. The Absence of Prejudice

"'A prosecutor commits misconduct when his or her conduct either infects the trial with such unfairness as to render the subsequent conviction a denial of due process, or involves deceptive or reprehensible methods employed to persuade the trier of fact.' [Citation.]" (*People v. Nunez & Satele* (2013) 57 Cal.4th 1, 31.) Although the prosecutor did not engage in a pattern of misconduct, the trial court found the prosecutor should not have made the argument that there was a lack of evidence appellant fractured his jaw. Even if we were to assume the prosecutor committed misconduct, prejudice is lacking under either the state law, i.e., an evaluation of whether there is a reasonable probability the result of the trial would have been different absent the comments (see *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*)) or the federal Constitution, i.e., an analysis of whether the comments were harmless beyond a reasonable doubt (see *Chapman v. California* (1967) 386 U.S. 18, 24).

The trial court clearly admonished the jury to disregard the prosecutor's comments regarding the absence of medical records. Immediately prior to the arguments of counsel, the trial court instructed the jury that nothing the attorneys say, including remarks made during argument, is evidence. We presume the jury followed the admonishment (*People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17) and the court's instructions. (*People v. Boyette* (2002) 29 Cal.4th 381, 436). These presumptions were not rebutted.

5

The prosecutor's comments constituted only 11 lines out of 30 pages of argument. Moreover, the issue of whether appellant's jaw was broken was, at best, remotely related to his defense that he accidently hit Lamar while attempting to leave the gas station. Appellant's credibility turned on whether his version of the events matched what was depicted in the video irrespective of whether his jaw was injured or actually broken.

"'It is only in extreme cases that the court, when acting promptly and speaking clearly and directly on the subject, cannot, by instructing the jury to disregard such matters, correct the impropriety of the act of counsel and remove any effect his conduct or remarks would otherwise have.' [Citations.]" *(People v. Fitzgerald* (1972) 29 Cal.App.3d 296, 312.) This was not such an extreme case. The prosecutor's comments were not prejudicial to the defense.

### B.  The Absence of a Supplemental Probation Report

"The court must order a supplemental probation officer's report in preparation for sentencing proceedings that occur a significant period of time after the original report was prepared." (Cal. Rules of Court, rule 4.411(c); see also § 1203, subd. (b)(1).) The initial probation report was prepared approximately one year prior to the sentencing hearing. We accept respondent's concession that the trial court erred by neglecting to order a supplemental report but find the error to be harmless under *Watson*.

When a trial court errs by failing to order a supplemental probation report, we may only remand for resentencing if it is reasonably probable the defendant would receive a more favorable sentence in the absence of the error. (*People v. Dobbins* (2005) 127 Cal.App.4th 176, 182.) We conclude there is no reasonable probability the sentence would have been any different if a supplemental report had been prepared.

The trial court conducted a lengthy sentencing hearing, allowing several people to speak. It heard from Lamar's mother, appellant, appellant's father and appellant's sister. The prosecutor indicated Lamar was too angry to address the court at sentencing but that Lamar had a 12-year-old son and everyday was "a struggle." The trial court considered

6

the facts that appellant was on probation for two misdemeanors when he committed the offenses and that he had no other record. It characterized appellant as a "good person who's done something very, very bad." The court indicated it "thought long and hard" about appellant's case, listened to what was said in court and had reviewed the sentencing memorandums. The court opined appellant has "got to face what he did." Although the prosecution argued for the imposition of the high term and appellant argued for a grant of probation, the court selected the middle term of three years for the assault plus the requisite three years for inflicting great bodily injury.

The original probation officer's report acknowledged appellant's criminal history was minimal. But, it recommended a state prison sentence based on the violent act resulting in the victim's leg being amputated. These considerations were unaffected by the passage of time and were, in fact, the same considerations cited by the trial court in reaching its decision regarding the appropriate sentence.

Appellant argues his circumstances changed since the first report was made in that he was acquitted of attempted murder and, for one year, he behaved himself in county jail. However, the court was well aware of these changes as it had presided over the trial and had reviewed appellant's sentencing memorandum which included his three-page single-spaced letter that not only explained his life and expressed remorse but also (a) identified the classes he took and the certifications he received while in jail and (b) explained his acceptance as only one of eight inmates into the county jail "Merit Master" program. Nothing in the record suggests the trial court ignored these factors—indeed, by describing appellant was a "good" person, the record reflects quite the opposite is true.

A supplemental report would have added little, if anything, to the trial court's already thoughtful consideration of the panoply of circumstances pertaining to appellant and the nature of his offenses. The error in failing to obtain one was harmless.

7

## C.  The Sentence was Within the Court's Discretion

### 1.  Denial of Probation

Because the jury determined appellant inflicted great bodily injury on Lamar, appellant could not be granted probation unless the trial court found his case was one of the "unusual cases where the interests of justice would best be served if the person is granted probation . . . ."  (§ 1203, subd. (e) & (e)(3).)  "A trial court has broad discretion to determine whether a defendant is suitable for probation.  [Citation.]  The determination whether a case is an 'unusual' case is also within the sound discretion of the trial court.  [Citation.]  An appellant bears a heavy burden when attempting to show an abuse of such discretion.  [Citation.]  To establish abuse, the defendant must show that, under all the circumstances, the denial of probation was arbitrary, capricious or exceeded the bounds of reason.  [Citation.]"  (*People v. Bradley* (2012) 208 Cal.App.4th 64, 89.)

California Rules of Court, rule 4.413(c) provides a list of factors that may indicate the case is an unusual case warranting a probationary grant.  Appellant claims the trial court erred by neglecting to apply these factors to his case.  But, "'[u]nder rule 4.413, the existence of any of the listed facts does not necessarily establish an unusual case; rather, those facts merely '*may* indicate the existence of an unusual case.'  [Citation.]  This language indicates the provision 'is permissive, not mandatory.'  [Citation.]"  (*People v. Stuart* (2007) 156 Cal.App.4th 165, 178.)

In any event, the absence of a record demonstrating consideration of the factors in rule 4.413 may be explained by the facts that those circumstances were not applicable to appellant's case.  The great bodily injury suffered by Lamar was certainly not less serious than that typical for assault cases.  (Cal. Rules of Court, rule 4.413(c)(1)(A).)  Appellant's offenses were not less serious than a prior felony that caused the limitation on probation.  (Cal. Rules of Court, rule 4.413(c)(1)(B).)  There was inadequate evidence

appellant was provoked into committing the crime as the jury rejected his position that he accidently struck Lamar as he was exiting the parking lot in fear for his life. (Cal. Rules of Court, rule 4.413(c)(2)(A).) There was no evidence appellant was suffering from a mental condition. (Cal. Rules of Court, rule 4.413(c)(2)(B).) Appellant was not "youthful or aged." (Cal. Rules of Court, rule 4.413(c)(2)(C).)

If anything made this case unusual, it was the severity of the injury suffered as a result of the assault. This did not weigh in favor of probation. The sentencing hearing has been detailed above. The trial court balanced appellant's minimal prior criminal history against the fact that the offenses were aggravated by the severity of Lamar's injury. It listened to the statements of appellant, appellant's family and Lamar's mother. The court also considered appellant's letter concerning his life, accomplishments and remorse.

After devoting "long and hard" thought to appellant's case, probation was denied. The decision was far from arbitrary or capricious. There was no abuse of discretion.

### 2. The Middle Term

Appellant's alternative contention the "maximum period of time warranted was the low term," is limited to one sentence incorporating his argument that probation was improperly denied. We reject the claim for two reasons. First, it is not adequately developed. (*Interinsurance Exchange v. Collins* (1994) 30 Cal.App.4th 1445, 1448 ["[P]arties are required to include argument and citation to authority in their briefs, and the absence of these necessary elements allows this court to treat appellant[s'] [contentions] as waived."]; *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [appellate court "will not develop the appellants' arguments for them"]; Cal. Rules of Court, rule 8.204(a)(1)(B) [each point in a brief must be supported by "argument and, if possible, by citation of authority"].)

Second, like the decision to grant or deny probation, the selection of the determinate term from a sentencing triad is reviewed for an abuse of discretion. (See

9

*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) Reversal is allowed only if there is a clear showing the sentence is arbitrary or irrational. (*Ibid.*) Based on the previously identified myriad of factors considered by the trial court, the decision to impose the middle term was "not arbitrary and capricious," was "consistent with the letter and spirit of the law," and was "based upon an individualized consideration of the offense, the offender, and the public interest.'" (*People v. Sandoval, supra,* 41 Cal.4th at p. 847.) There was no abuse of discretion in imposing the middle term.

### III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KUMAR, J.[*]

We concur:

TURNER, P. J.

KRIEGLER, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.