Filed 3/23/22  Benjamin M. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BENJAMIN M., SR.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF KERN COUNTY,<br><br>Respondent;<br><br>KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Real Party in Interest. | F083681<br><br>(Super. Ct. No. JD133694-01)<br><br>**OPINION** |

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Marcos R. Camacho, Judge.

Benjamin M., Sr., in pro. per., for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

-ooOoo-

---

[*]     Before Meehan, Acting P. J., Snauffer, J. and DeSantos, J.

Petitioner Benjamin M., Sr., (father), in propria persona, seeks an extraordinary writ (Cal. Rules of Court, rule 8.452)[1] from the juvenile court's orders issued at a contested 12-month review hearing (Welf. & Inst. Code, § 366.21, subd. (f))[2] terminating his reunification services and setting a section 366.26 hearing for April 6, 2022, as to his now nine-year-old son, Benjamin M., Jr., (the child). The child's mother S.M. (mother) is deceased. Father seeks a writ directing the juvenile court to return the child to his custody, and he requests a stay of the section 366.26 hearing pending our review of his writ petition. We conclude father's petition fails to comport with the procedural requirements of rule 8.452 regarding extraordinary writ petitions and dismiss the petition.

## PROCEDURAL AND FACTUAL SUMMARY

### *Prior Dependency Proceedings*

In October 2014, the Kern County Department of Human Services (department) received a referral alleging caretaker incapacity. Mother was taken to a hospital after she was behaving erratically while under the influence of methamphetamine at a domestic violence shelter with the child. The child, at one year of age, was placed into protective custody by an officer with the Bakersfield Police Department.

A department social worker assigned for further investigation was informed by a relative that mother and father had a history of domestic violence. The relative explained that father stabbed mother the prior week, which led to mother seeking help from the domestic violence shelter. Father answered a phone call from the social worker, but he hung up the phone once she identified herself. The department's detention report detailed multiple referrals for concerns of substance abuse and domestic violence between mother and father from February 2012 to August 2014.

---

**1**     All further rule references are to the California Rules of Court.

**2**     All further statutory references are to the Welfare and Institutions Code.

The juvenile court declared the child a dependent based on allegations of domestic violence, substance abuse, and mental health, and it ordered father to complete domestic violence as a perpetrator and substance abuse and mental health evaluations and services as part of his family reunification case plan. At the six-month review hearing, the child was returned to mother on a plan of family maintenance while father's reunification services were continued. In December 2015, mother was granted custody of the child and dependency was dismissed. In January 2020, mother died as a result of multiple health complications.

*Current Dependency Proceedings*

*Initial Removal*

In April 2020, the department received a referral alleging father's home smelled of urine and had not been kept clean since mother's death. Drug use was suspected in the home, and father was not taking his prescribed medications for schizophrenia. The referral was closed as inconclusive due to father's failure to respond to an investigating social worker's request to meet.

The department received a referral for general neglect of the child due to unsanitary conditions of the home in August 2020. It was also reported that father was providing the child with twice the dosage of his psychotropic medication, and he failed to take the child to doctor appointments and counseling sessions. The referral was closed as inconclusive because father denied the investigating social worker access to the home and claimed to be providing the proper dose of the child's medication.

In September 2020, a referral was received after the child went to a neighbor's home with bruises and reported feeling unsafe. The child often came to the neighbor's home with bruises, and the child was trained to be afraid of law enforcement by father. Father and his girlfriend were claimed to be using and selling methamphetamine. The referral was evaluated out without further explanation.

On October 9, 2020, father was found intoxicated in public and banging his head on a roadway in front of his home. Father stated that both the paternal grandmother and he did not know the whereabouts of the child, who was now seven years of age. The responding law enforcement officer found the living conditions of the home to be unfit for a child due to urine stained mattresses, trash and dog feces covering the floor, bugs crawling on the kitchen counter, and an eroding bathroom floor. Father was arrested and the child was taken into protective custody by the responding law enforcement officers.

On October 12, 2020, a department social worker received the case for further investigation. The child informed the social worker that he did not feel safe at home, and he disclosed receiving bruises from father hitting him. Father was also reported to have five drinks per day and yell "all the time." Father denied being intoxicated on the night of his arrest, and he claimed to only use alcohol on occasion. He also asserted the conditions of the home were safe except for a problem with a leak in the roof, and he denied any issues with domestic violence since the incident that led to the prior dependency proceedings in 2014. Father was taking prescription medication and attending counseling for his mental health diagnoses of bipolar, depression, and paranoia.

The department filed an original petition alleging the child was described by section 300, subdivisions (b)(1) and (g). The petition alleged that the child was at substantial risk of serious physical harm as a result of father's significant history of alcohol abuse and the unsanitary home conditions. On October 15, 2020, the juvenile court conducted an uncontested hearing where it ordered the child detained from father's custody, and it set a jurisdiction and disposition hearing for November 5, 2020.

*Jurisdiction and Disposition*

The department's jurisdiction report further detailed the investigation subsequent to the child's removal and included various law enforcement reports related to the date of the father's arrest. The disposition report described the cause of mother's death in January 2020 as a result of cardiopulmonary arrest, respiratory failure, acute respiratory

syndrome, and influenza pneumonitis. It also indicated that father abused methamphetamine and alcohol. The child was placed in a resource family home while family finding efforts were underway.

At an uncontested jurisdiction and disposition hearing on November 9, 2020, father appeared while in custody. The juvenile court found the allegations of the petition true, adjudged the child a dependent, ordered the child removed from father's custody, and ordered family reunification services to the father. As part of his case plan, father was ordered to participate in counseling for child neglect, parenting, and substance abuse, complete a mental health assessment and recommendations and random drug testing, and refrain from alcohol use. Father's visitation with the child was ordered to be once per month while incarcerated and twice per week while out of custody.

*Family Reunification Period*

In its report for the six-month review hearing, the department recommended the juvenile court continue reunification services for father. Father remained in jail and reported recent enrollment in parenting, substance abuse, domestic violence, and anger management classes. The social worker had not received proof of father's enrollment, but father was encouraged to provide proof by mail. Father did not have an anticipated date for his release from custody. Monthly visits took place between father and the child without any concerns noted. In March 2021, the child was placed with his adult brother.

On May 5, 2021, at the six-month review hearing, the juvenile court continued reunification services and set the 12-month review hearing for November 5, 2021. The juvenile court found father made minimal progress toward alleviating the causes necessitating placement and did not make acceptable efforts to facilitate return of the child to his care.

In September 2021, father told the social worker that he completed substance abuse counseling and parenting, anger management, and cafeteria food service classes through the Bakersfield Adult School while incarcerated. Father was released from

custody on October 1, 2021, and provided the social worker with certificates of completion for parenting and neglect classes, and anger management counseling. Father admitted to recent use of methamphetamine and alcohol upon his release from incarceration. The social worker reminded father about the substance abuse counseling and sobriety requirements of his case plan, and father agreed to submit to a drug test. The results of father's drug test after his release from custody were positive for methamphetamine.

During father's monthly supervised visits while incarcerated, the child participated in virtual visits from June 2021 to August 2021. The child chose to participate in the visits for 10 minutes at a time, and he refused to visit with father in July 2021. A supervised visit was cancelled in September 2021 due to quarantine protocol at the jail, and the child refused to visit with father in October 2021. The child stated he wanted to continue to live with his adult brother when asked about his ideal living situation and desired outcome for the upcoming 12-month review hearing. The child's adult brother and his girlfriend indicated their desires to adopt the child, and the adult brother's children viewed the child as their brother.

The department's report for the 12-month review hearing recommended termination of father's reunification services and the setting of a section 366.26 hearing. At the continued 12-month review hearing held on December 7, 2021, father's counsel requested that father's reunification services continue to allow him time to try to reunify with the child. He acknowledged that father was incarcerated for a majority of the reunification period, and he represented that father was working on his substance abuse issues.

The juvenile court followed the department's recommendation to terminate reunification services based upon the evidence that father had not enrolled in substance abuse counseling and his positive methamphetamine test on October 6, 2021. It did not believe that father participated in the plan overall considering the totality of the

6.

circumstances. The juvenile court found that father's progress was minimal, terminated his family reunification services, and set a section 366.26 hearing.

## DISCUSSION

### *Relevant Legal Principles and Standard of Review*

At the 12-month review hearing, the juvenile court must order the return of the child to the physical custody of his or her parent unless it finds the return would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. (§ 366.21, subd. (f)(1).) If the court does not return the child, it may continue the case for up to six months if there is a substantial probability the child will be returned to parental custody within 18 months from the time the child was initially removed. (§ 366.21, subd. (g)(1).) To find a substantial probability of return, the court must find the parent regularly visited the child, made significant progress in resolving the problem prompting the child's removal, and demonstrated the capacity and ability to complete the objectives of the case plan and provide for the child's safety, protection, and well-being. (§ 366.21, subd. (g)(1)(A)–(C).) Otherwise, the court must terminate reunification services and set a section 366.26 hearing to implement a permanent plan for the child. (§ 366.21, subd. (g)(4).) Before the court may terminate services and set a section 366.26 hearing, however, there must be clear and convincing evidence the department provided reasonable services to the parent. (§§ 361.5, subd. (a), 366.21, subd. (g)(4).)

We review the juvenile court's findings and orders for substantial evidence, resolving all conflicts in favor of the court, and indulging in all legitimate inferences to uphold the court's ruling. (*In re Brison C*. (2000) 81 Cal.App.4th 1373, 1378−1379.) Under this well-established standard, "we review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders. [Citation.] 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the

7.

findings of the trial court.' " (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688−689.)

Father bears the burden on appeal of establishing that the evidence was insufficient to support the juvenile court's findings. (*In re A.G.* (2017) 12 Cal.App.5th 994, 1001.) And the juvenile court's order, "like any other judgment or order of a lower court, is presumed to be correct, and all intendments and presumptions are indulged to support the order on matters as to which the record is silent." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 88.)

On the issue of whether the court erred by failing to find a substantial probability of return existed, the question on appeal "becomes whether [his] evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4.) "Put another way, the issue is 'whether the evidence compels a finding in favor of [father] as a matter of law.' " (*Valero v. Board of Retirement of Tulare County Employees' Assn.* (2012) 205 Cal.App.4th 960, 966.)

### The Extraordinary Writ Petition

As a general proposition, a juvenile court's rulings are presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) A parent seeking review of the juvenile court's orders from the setting hearing must, as father did here, file an extraordinary writ petition in this court on Judicial Council form JV–825 to initiate writ proceedings. The purpose of such petitions is to allow the appellate court to achieve a substantive and meritorious review of the juvenile court's findings and orders issued at the setting hearing in advance of the section 366.26 hearing. (§ 366.26, subd. (*l*)(4).)

Rule 8.452 sets forth the content requirements for an extraordinary writ petition. It requires the petitioner to set forth legal arguments with citation to the appellate record.

(Rule 8.452(b).)  In keeping with the dictate of rule 8.452(a)(1), we liberally construe writ petitions in favor of their adequacy recognizing that a parent representing him or herself is not trained in the law.  Nevertheless, the petitioner must at least articulate a claim of error and support it by citations to the record.  Failure to do so renders the petition inadequate in its content and we are not required to independently review the record for possible error.  (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Here, father's petition is inadequate in presenting a claim of error.  He seeks the return of the child to his custody and states "my son wants to come back home," but he does not assert that the juvenile court erred in finding it would be detrimental to return the child to his custody.  Nor does he challenge the findings underlying the court's order terminating reunification services.  He does not, for example, contend the reunification services offered by the department were not reasonable.  Nor does he argue the court should have continued reunification services because there was a substantial probability the child could be returned to his custody after another period of reunification efforts.

Father does say in his petition that he was unable to fight for custody of his child because he was in jail and "I've done everything asked of me."  To the extent he is arguing he fully complied given his circumstances and should receive additional time to reunify, the evidence does not support his contention.  Other statements father made in his petition could be construed as a challenge to the evidence on which the juvenile court exercised its jurisdiction.  However, the court's jurisdictional findings are now final and no longer reviewable.  Father also asserts that he is currently seeking counseling at "CCS."[3]  Evidence of his current efforts was not before the juvenile court, and we cannot review it.  (*In re Zeth S*. (2003) 31 Cal.4th 396, 413.)

---

**3** Father does not explain what the abbreviation "CCS" represents. We assume from the context of his statement that it is a service provider of child welfare related services, but we are unable to speculate as to what "CCS" is.

9.

A party's "conclusory presentation, without pertinent argument or an attempt to apply the law to the circumstances of this case, is inadequate," and the contention will be found by the appellate court to have been abandoned. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) Without citation to authority or to the record, or any discussion supporting his conclusory statements, any challenge to the juvenile court's findings that return of the child would be detrimental, reunification services provided by the department were reasonable, and there was not a substantial probability of return by the 18-month review hearing must be deemed abandoned. (See *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [appellate court has no obligation to "develop the appellants' arguments for them"].) Consequently, he failed to raise a claim of reversible error. Therefore, his petition does not comply with rules 8.450–8.452 and is inadequate for appellate review.

Even if we were to liberally construe the petition as disputing the juvenile court's findings of detriment and reasonable services and refusal to find that there was a substantial probability that the child would be returned by the 18-month date of April 15, 2022, we would affirm the juvenile court's rulings. The child was primarily removed from father's care as a result of his longstanding problem with substance abuse. Father had failed to reunify with the child in a prior dependency case that arose from father's substance abuse and domestic violence relationship with mother. Nevertheless, the juvenile court and department provided father with another opportunity to reunify with the child by ordering a case plan that included substance abuse counseling and prohibiting the use of alcohol. However, father immediately resorted to the use of methamphetamine and alcohol after his release from custody for a majority of the reunification period, and he failed to provide proof of enrollment in substance abuse counseling during the two months he was out of custody.

On that evidence, the juvenile court properly found the child could not be returned to father's custody without subjecting him to a substantial risk of detriment. Further,

given father's minimal progress up to that point, there was no reason for the juvenile court to believe reasonable services were not provided or that he could safely parent the child in the time remaining before the juvenile court would conduct an 18-month review hearing.

Based upon the record before us, we would conclude substantial evidence supports the juvenile court's findings and orders. However, we dismiss father's writ petition because it fails to comport with rule 8.452. We also deny his request for a stay of the section 366.26 hearing.

## DISPOSITION

The petition for extraordinary writ is dismissed. This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A). The request for a stay of the section 366.26 hearing is denied.