Filed 1/13/25  S.L. v. Superior Court CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| S.L.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF FRESNO COUNTY,<br><br>Respondent;<br><br>FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Real Party in Interest. | F088931<br><br>(Super. Ct. Nos. 23CEJ300205-1, 23CEJ300205-4, 23CEJ300205-5)<br><br>**OPINION** |

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Kimberly J. Nystrom-Geist, Judge.

S.L., in pro. per., for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Real Party in Interest.

---

[*]        Before Franson, Acting P. J., Peña, J. and Snauffer, J.

-ooOoo-

S.L. (mother), in propria persona, seeks an extraordinary writ (Cal. Rules of Court, rule 8.452)[1] from the juvenile court's order issued at a contested 12-month review hearing (Welf. & Inst. Code, § 366.21, subd. (f))[2] terminating her reunification services and setting a section 366.26 hearing for February 25, 2025, as to her children D.L. (now 15 years old), L.B. (now nine years old), and G.B. (now eight years old) (together the children).[3] Mother seeks a writ directing the juvenile court to order visitation between the children and mother and to return and grant custody to her.

We conclude mother's petition fails to comport with the procedural requirements of rule 8.452 regarding extraordinary writ petitions and dismiss the petition.

## STATEMENT OF THE CASE AND FACTS

*Initial Removal, Jurisdiction, and Disposition*

On February 21, 2023, D.L. disclosed that she had been sexually abused by her stepfather, Julio B. An emergency protective order was issued, and a safety plan was put in place in which mother agreed to be protective and not allow Julio B. in the home. However, when law enforcement responded to a disturbance in the home on July 27, 2023, it was discovered that Julio B. had been back in the home since March 2023, and mother indicated that she did not know if she believed that D.L. had been sexually abused by Julio B. Mother minimized any concerns and blamed D.L.'s defiant behavior.

As a result of mother's failure to follow the safety plan, law enforcement placed a section "300 hold" on the children, including J.L. and J.B. At the detention hearing, the

---

[1] All further references to the rules are to the California Rules of Court.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[3] Mother also lists another child, son J.L. (now 14 years old) on the petition. However, after being detained he ran away from placement and his whereabouts remained unknown. Mother has another child, son J.B. (now 12 years old), who was returned to mother early in the proceedings on extended visits, and is not at issue here.

2.

juvenile court ordered the children and J.B. be removed from mother's custody and set a combined jurisdiction and disposition hearing for September 5, 2023.[4]

The combined jurisdiction and disposition hearing was continued to October 10, 2023, due to a late report. The department's report requested that the juvenile court find all the counts of the original petition to be true, and that mother be ordered family reunification services, including parenting classes, a mental health assessment and recommended treatment, and a domestic violence assessment and any recommended treatment.

The juvenile court proceeded with jurisdiction orders at the October 10, 2023 hearing, finding all counts of the original petition filed July 31, 2023, true. A further hearing for disposition was set for November 14, 2023.

At the continued disposition hearing November 14, 2023, the juvenile court followed the department's recommendations, ordering family reunification services to mother and set the matter for a six-month review to be held May 14, 2024.

No appeal was taken from these findings and orders.

*Six-Month Review Period*

The report prepared by the social worker for the six-month review detailed mother's efforts and progress in services. While mother was not in complete compliance with the reunification plan, she had shown willingness to participate and maintained contact with the department. She had completed parenting and anger management classes, but was dropped from abuse prevention classes due to absences. The department recommended that mother's family reunification services be continued.

At the scheduled status review hearing of May 14, 2024, the juvenile court followed the department's recommendation and continued family reunification services for mother and set a 12-month status review hearing for September 10, 2024.

---

[4] See footnote #3.

No appeal was taken from these findings and orders.

*12-Month Review Period*

The report prepared by the department for the 12-month review detailed mother's efforts and progress in services, with a recommendation that family reunification services be continued for mother as to the children and that family maintenance be ordered for J.B. Mother was not in compliance with all services; however, the department highlighted that mother had shown a willingness to participate in all court ordered services. Mother had re-enrolled in a family behavioral intervention program in May of 2024, but was dropped in August 2024, due to absences. There were also reports that stepfather Julio B. was coming and going into the home as he wished. Julio B. had provided income for mother to keep her apartment and, after Julio B. was detained and arrested, she was in danger of being evicted.

Mother requested a contested hearing on the department's 12-month review recommendation, requesting that the children be returned to her custody on family maintenance services. The matter was set for a contested review hearing on October 29, 2024.

At the contested 12-month status review hearing, the juvenile court heard testimony from mother. Mother testified that she had attended classes, but still had 25 child abuse prevention classes left.

The department argued that, while mother had progressed she had not completed all of her classes as yet. The department requested that reunification services continue for the children. Counsel for the children submitted on the department's argument.

Mother's counsel argued that L.B. and G.B. be returned to mother on family maintenance.[5] Counsel argued that mother had made significant strides in her

---

[5] D.B. did not want to return to mother's home, and counsel argued for continued family reunification services as to her.

reunification plan, and that she understood the mistakes she had made and was attempting to rectify them. Counsel again framed mother's contact with Julio B. as having occurred because she needed financial help and, as to her reluctance to initially believe D.B.'s allegations against him, argued, "it was difficult for her to wrap her mind around everything, which I think is very common in these cases."

The juvenile court found that the department "exceeded its burden and has demonstrated by a preponderance or more of evidence that return of the children to the physical custody of the parent would create a substantial risk of detriment to their safety, protection, physical or emotional well-being, that includes that the mother maintained an ongoing relationship with [Julio B.]." In addition, the juvenile court did not find mother's testimony that her continued relationship with Julio B. was for financial reasons only, citing D.B.'s reports that Julio B. came over to the home when the children had visits with mother, and was coming and going as he wished. The juvenile court stated that mother lied when she promised D.B. she would not have a relationship with her abuser, Julio B. The juvenile court also noted that mother had "not clearly indicated any degree of anger toward [Julio B.] for sodomizing her daughter or even an acknowledgment of that."

The juvenile court noted that, while a parent need not have completed all services before children can be returned to their care, it was of great concern that mother was dropped from child abuse prevention programs "at least twice" and she still had only completed half of the program.

As to reasonable services, the juvenile court found by clear and convincing evidence that the department had "far exceeded reasonable services and has gone to extraordinary lengths to engage the mother and provide her with services." The juvenile court found there was no substantial probability that the children could be returned to mother's custody if reunification was continued, as the evidence presented did not support that mother had made significant progress in resolving the problems that led to

removal, or that she has demonstrated the capacity and ability to complete the objectives of her treatment plan. As such, the juvenile court set a hearing to select and implement a permanent plan for the children pursuant to section 366.26 for February 25, 2025.

Mother filed a timely notice of intent to file writ petition on November 5, 2024, and this writ proceeding ensued.

## DISCUSSION

As a general proposition, a juvenile court's rulings are presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) A parent seeking review of the juvenile court's orders made at the setting hearing must file an extraordinary writ petition in this court substantively addressing the specific issues to be challenged and supporting that challenge by an adequate record. The purpose of such petitions is to allow the appellate court to achieve a substantive and meritorious review of the juvenile court's findings and orders issued at the setting hearing in advance of the section 366.26 hearing. (§ 366.26, subd. (*l*)(4)(A).)

We must first address the adequacy of mother's writ petition. Rule 8.452 sets forth the content requirements for an extraordinary writ petition, including that a petition "must be accompanied by a memorandum," which "must provide a summary of the significant facts, limited to matters in the record"; "must state each point under a separate heading or subheading summarizing the point and support each point by argument and citation of authority"; and "must support any reference to a matter in the record by a citation to the record" and "explain the significance of any cited portion of the record and note any disputed aspects of the record." (Rule 8.452(a)(3), (b)(1)-(3).)

We liberally construe a writ petition in favor of its adequacy where possible, recognizing that a parent representing him or herself is not trained in the law. (See rule 8.452(a)(1).) Nevertheless, the petitioner must at least articulate a claim of error and support it by citations to the record. Failure to do so renders the petition inadequate in its

6.

content and the reviewing court need not independently review the record for possible error. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Here, mother's petition is inadequate in presenting a claim of error. On page three of the preprinted "Petition for Extraordinary Writ" (JV-825), mother checked the box indicating she was requesting the court to direct the juvenile court to order visitation and return or grant custody of the children to her. In response to question No. 8 regarding the summary of factual basis for the petition with references to specific portions of the record mother states only that "I was not okay with the Judge[']s order. I have done everything that the court has asked of me. I feel the Judge did a lot of assum[ing] regarding my case." Question Nos. 6 and 7 of the petition ask the petitioner to explain how the order was erroneous and to attach supporting documents, but mother has left those questions blank. Mother does not make any citations to the record and states no specific claim of error as to the findings and orders.

Mother has included several attachments to the petition, but it is unclear how they support the claim that the juvenile court erred in the section 366.21 orders. Mother's attachments include a lengthy list and a supposed explanation of why she didn't do "things differently" from the inception of the case, in essence claiming she did not separate from her relationship with Julio B. (who was accused of sexually molesting D.L.) sooner because mother was the "victim", as she lost her job and needed him for financial reasons. She claimed she was "thinking differently now that I'm sober." She also included several attachments of what appear to be certificates of completion for various classes and immunization records from 2011-2015 for J.B. and J.L., children not at issue here.

A party's "conclusory presentation, without pertinent argument or an attempt to apply the law to the circumstances of this case, is inadequate," and the contention will be found by the appellate court to have been abandoned. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) Without citation to authority or to the record, or any

discussion supporting her conclusory statements, any challenge to the juvenile court's findings that return of the children would be detrimental and there was no substantial probability of return by the 18-month review hearing must be deemed abandoned. (See *Dills v. Redwoods Association, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [appellate court has no obligation to "develop the appellants' arguments for them"].) Consequently, mother failed to raise a claim of reversible error. Therefore, her petition does not comply with rules 8.450 through 8.452 and is inadequate for appellate review.

Even if we were to construe mother's petition as an adequate challenge to the juvenile court's refusal to find that there was a substantial probability that the children would be returned by the next review date, her claim lacks merit. Mother's primary contention appears to be that she was continuing her participation in services and visitation, and had adequately explained her continued relationship with Julio B. However, the juvenile court terminated her services based on the minimal progress in child abuse prevention services, which was at the core of her dependency case, and her reluctance to understand her relationship with Julio B. and the negative effect it had on D.B. On that evidence, the juvenile court properly found the children could not be returned to mother's custody without subjecting them to a substantial risk of detriment. Further, given mother's lack of progress up to that point, there was no reason for the court to believe she could safely parent the children by the 18-month review date.

Based upon the record before us, we would conclude substantial evidence supports the juvenile court's findings and order. However, we also dismiss mother's writ petition because it fails to comport with rule 8.452.

## DISPOSITION

The petition for extraordinary writ is dismissed. This opinion is final as to this court pursuant to rule 8.490(b)(2)(A).