Filed 6/24/26  Khedr v. Superior Court CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| VICTOR KHEDR et al.,<br><br>        Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN MATEO COUNTY,<br><br>        Respondent;<br><br>BROADMOOR POLICE PROTECTION DISTRICT et al.,<br><br>        Real Parties in Interest. | A173872<br><br>(San Mateo County<br>Super. Ct. No. 21CIV03905) |

This petition for writ of mandate presents the question whether, in the context of an allegation of continuing retaliatory and harassing conduct, a government claim form that provides no dates other than the date the form was signed and states only that the date of the loss is "ongoing" complies with the requirements of Government Code section 910, subdivision (c).[1] Subdivision (c) requires that the notice shall include "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted."  (§ 910, subd. (c).)  The trial court sustained demurrers to several of petitioners' causes of action on the basis that their claim forms

_____

[1] All undesignated statutory references are to the Government Code.

1

failed to comply with section 910. Petitioners argue that their claim forms complied, or at least substantially complied, with section 910 because they stated that the wrongful conduct was ongoing and the forms were dated. We hold that petitioners' claim notices neither comply nor substantially comply with section 910 because they fail to specify any dates or date ranges on which the alleged wrongful conduct occurred.

## BACKGROUND

Petitioners Victor Khedr and Syed Husain were part-time police officers with real party in interest (RPI) Broadmoor Police Protection District (District). They, along with petitioners David Parenti and Five Points Tire Imports, Inc. (Five Points),[2] sued the District, certain other police officers, and certain police commissioners. Petitioners alleged they were retaliated against and ultimately terminated after they reported fiscal mismanagement and conflict of interest violations concerning a former police commissioner and chief of police, Michael Connolly.[3] We summarize petitioners' presentation of their claims and the trial court's rulings on RPI's demurrers.

I.    *Notices of Claim and RPI's Response*

On January 19, 2021, Khedr and Husain each submitted a claim form to the District. Among other requested information, the forms ask for the "Date of Loss." Both Khedr's and Husain's completed forms state the "Date of Loss" as "Numerous—Loss is ongoing." In response to the request for a description of the incident which caused him to make a claim, Khedr provides the following narrative: "Chief of Police Michael P. Connolly, while still

---

[2] Parenti and Five Points are not parties to this writ proceeding.

[3] The real parties in interest are the District, Sylvia Koh, James Kucharszky, Ralph Hutchens, Connolly, Patrick Tobin, Peter Nelson, John Duncan, and Eric Eaton.

serving as an elected Police Commissioner, used his role as Chair of the commission to appoint himself as the next paid Chief of Police of the . . . District.  Opon [*sic*] the district receiving a Public Records Request for information pertaining to the district's mismanagement of public funds, Connolly threatened to terminate anyone involved with the request. Connolly and his staff, believing that Claimant had information regarding the inquiry into this mismanagement, harassed and interrogated Claimant at the District and at his business, which services the district's vehicles. Connolly additionally implied he would take vehicles elsewhere to be serviced and has done so with numerous vehicles.  Due to the inquiry into the district's finances and mismanagement, Connolly and his staff proceeded to liquidate District assets rapidly, including firearms from evidence despite Claimant's objection due to the District lacking authority to sell such firearms.  Connolly and staff fabricated claims against Claimant to cover up inquiries into Connolly's own misconduct.  District management conspired with the Board of Commissioners to pursue false claims against Claimant in an effort to avoid examining the district's finances which were the root of the issues.  District management took away roles from Claimant, discriminated against him, retaliated in response to whistleblowing activities, and made disparaging statements to intentionally cause harm to Claimant.  Connolly has threatened to conduct an internal investigation to terminate Claimant since the District Attorney's Office investigation was unfruitful.  District management made their intent to terminate public at a Commission hearing."

In response to a question asking for the basis of the claim, Khedr states:  "Connolly made statements to Claimant that he would terminate anyone involved with a public records request into the mismanagement of the

3

district.  District management interrogated Claimant numerous times and threatened Claimant with search warrants and investigations by numerous government agencies.  The district fabricated a false case alleging stolen firearms and referred the matter to the San Mateo County District Attorney's office for a criminal investigation.  Despite being in possession of evidence proving no wrongdoing by Claimant this evidence was withheld from investigators.  District management initiated a harassment campaign against Claimant and others, including stalking Claimant, revoking and removing employment roles from Claimant, making disparaging comments regarding claimant and others, some even in public commission meetings.  Management even made false claims to the public and stated on the record that Claimant and others shoudl be fired for protected whistleblower activity.  Management made disparaging statements resulting in loss of privilages and severe ongoing economic interference." (*Sic.*)  Khedr's claim form also includes his claimed damages, a list of District employees whom he alleges caused his injuries, a list of witnesses, and his attorney's name and contact information.  Khedr signed and dated the form on January 19, 2021.  Khedr's claim form does not state a date or range of dates when the alleged conduct occurred.

Husain's claim form's "Description of incident" section begins with the same statements in Khedr's claim form regarding Connolly's using his role as commissioner to appoint himself chief of police, the District's receipt of a public records request for information regarding mismanagement of public funds, and Connolly's threats and harassment.  Husain's form further states: "District staff has made disparaging comments about claimant both privately and publicly.  Claimant is informed and believes that district staff made comments to other agencies claiming the very officers who reported

4

wrongdoing were now under investigation. Claimant is also informed and believes that district management made public disclosures of claimant's private information had disparaging and conversations regarding claimant with his coworkers. The district board allowed for management to retaliate against claimant and other employees of the department. Claimant submitted a whistleblower complaint to the California State Auditor's Office, and the Fair Political Practices Commission, and has been retaliated against consistently for doing so. Further, claimant was reduced in seniority and deprived of equal wages and promotional opportunities. Further, as a result of the districts fraudulent investigation into firearms, which entangled claimant due to commentary made by the district to other agencies, claimant's mother postponed a critical surgery due to ongoing false threats of search warrants. Claimants mother resides with claimant. Claimant filed a formal grievance with the district and its board which was ignored, thereby waiving any defense to the claims contained therein." (*Sic.*)

In response to a question asking for the basis of the claim, Husain states: "Connolly made statements to Claimant that he would terminate anyone involved with a public records request into the mismanagement of the district. District management made public disclosures at public meetings regarding their actions and interrogations. After filing multiple whistleblower complaints Claimant fell under immense scrutiny by district management. Management had numerous conversations with Claimant's coworkers leading them to shun him. Mangement also conspired a harassment campaign against claimant and other employees of the district. Management further made countless false statements to members of the public in a bizarre public relations stunt. On at least two occasions Claimant noticed district vehicles in close vicinity to his house and office. Claimant

5

believes district management was stalking claimant and other members of the district as the sighting was only days after Claimant's coworker's spouse observed the same vehicles in the vicinity of their home. The district's board held several meetings in closed sessions after the presentation of Claimant's claims, however no review of the claims of financial discrepancies were made and instead the board conspired against claimant and his associates." (*Sic.*) Husain's claim form also includes his claimed damages, a list of District employees whom he alleges caused his injuries, a list of witnesses, and his attorney's name and contact information. Husain signed and dated the form on January 19, 2021. Husain's claim form does not state a date or range of dates when the alleged conduct occurred.

On February 16, 2021, the District sent counsel for Khedr and Husain notices of insufficiency as to each claim, stating, in part, that their claim notices failed to comply with sections 910 and 910.2 and would not be considered on the merits because they did not specify a date of loss. The notices of insufficiency further stated that pursuant to section 910.8, the District would take no action for a period of 15 days and that if petitioners wished to correct the deficiencies, they should do so within that time period. Petitioners did not respond to the notices of insufficiency.

On March 15, 2021, the District sent Husain's counsel a notice of rejection, stating Husain's claim had been presented to the Board of Broadmoor Police Commissioners on February 9, 2021, and rejected in its entirety. On March 22, 2021, a similar notice of rejection was sent to Khedr's counsel.

## II. *Complaint and Demurrers*

Thereafter, petitioners, along with Parenti and Five Points, sued the District; Connolly; five police officer defendants (Patrick Tobin, Ronald

6

Banta, Peter Nelson, John Duncan, and Eric Eaton; collectively, officer defendants); and four police commissioners (Sylvia Koh, James Kucharszky, Ralph Hutchens, and Marie Brizuela; collectively, commissioner defendants). The first amended complaint alleges multiple causes of action, including, as relevant here, whistleblower retaliation (first cause of action); violation of the Tom Bane Civil Rights Act (Civ. Code, § 52.1) (eighth cause of action); invasion of privacy (ninth cause of action); and intentional infliction of emotional distress (11th cause of action).

Connolly, the officer defendants, the commissioner defendants,[4] and the District each demurred to the first amended complaint. As relevant here, one of the issues raised in the demurrers was whether the first, eighth, ninth, and 11th causes of action were barred based on petitioners' failure to comply with the Government Claims Act (§ 810 et seq.) by presenting notices of claim that did not include the date of the acts allegedly giving rise to liability.[5]

## III. *Trial Court's Rulings*

On April 11, 2025, the trial court issued a tentative ruling on Connolly's demurrer, finding, in part, that Connolly failed to establish petitioners' claim forms did not substantially comply with the Government

---

[4] Marie Brizuela is not included in the commissioner defendants' demurrer. The petition states she was dismissed from the lawsuit, and she is not a real party in interest in the writ proceeding.

[5] Connolly's demurrer raised the Government Claims Act issue as to the first, eighth, ninth, and 11th causes of action, and the trial court's order sustained the demurrer without leave to amend as to those causes of action. The demurrers of the commissioner defendants, the officer defendants, and the District raised the Government Claims Act issue as to those same causes of action, as well as certain additional causes of action. However, petitioners' reply to the return clarifies that their petition seeks to challenge only the trial court's rulings on the demurrers to the first, eighth, ninth and 11th causes of action.

7

Claims Act. At the hearing on the demurrer, the trial court agreed to permit supplemental briefing on the issue of substantial compliance. Following supplemental briefing and additional oral argument, the trial court issued an order sustaining Connolly's demurrer without leave to amend as to the first, eighth, ninth, and 11th causes of action on the basis that petitioners' claim forms failed to state the date of the alleged incidents giving rise to the claims asserted.

The trial court's order on Connolly's demurrer states, in relevant part: "Plaintiffs . . . made no 'attempt' to comply with the requirement of providing a date even after being advised of the defect and given an opportunity to remedy it or at least make an effort to substantially comply. . . . [T]he Court finds their Claims Forms are deficient because they 'totally omitted' a date and, even if their vague use of 'numerous' and 'ongoing' constitutes some level of compliance in response to the date inquiry, it is not substantial compliance. [¶] . . . [¶] [T]he question becomes whether the language used in Plaintiffs' Claims Forms here, i.e., 'Date of Loss: Numerous—Loss is ongoing,' constitutes a failure to include any date or, if not, whether the skeletal information related to date suffices as substantial compliance. [Citation.] The key word for the Court here is 'Loss.' While a 'loss' may be ongoing, the act causing the loss may not be. For example, if a person is unlawfully terminated, their income loss is arguably ongoing, but the act or tort that caused the loss was whatever day they were allegedly unlawfully terminated. . . . [T]he acts Plaintiffs allege were committed on discreet and known dates and Khedr and Husain failed to allege a single date or even a date range anywhere on their Claims Forms. All three Claims Forms made the following representation at ¶13: 'Claimant will provide further non-privileged information as requested by the district if deemed necessary for

8

consideration of this claim.' [Citation.] Khedr and Husain were advised of the date-related deficiency and provided no further information. [Citation.] [¶] There were exact dates for many of the alleged actions by Defendant and Khedr and Husain included none of them. . . . Alleging 'Numerous' for date of loss is no better than leaving the space blank for purposes of putting the agency on legally required notice of when the alleged harm was inflicted. 'Loss is ongoing' is equally devoid of value and combining them is useless . . . . Although . . . '[t]he rule of substantial compliance prevents the requirement of the impossible or absurd,' there was nothing impossible or absurd about Khedr and Husain being required to simply make at least some effort to include a date on the forms. They failed to do so, even after being advised by Defendant. Accordingly, Khedr's and Husain's forms were fatally defective as a matter of law. Plaintiffs' effort here was tantamount to an 'entire absence of one factor' per *Knight* [*v. City of Los Angeles* (1945) 26 Cal.2d 764]. The Court is mindful that the Claims Forms seek a 'Date of Loss' as opposed to date of incident or some like term, but it is noteworthy that Khedr's and Husain's forms contain no dates whatsoever, including in the narrative under 'Description of incident or accident, which caused you, make this claim (sic).' [Citation.] There isn't even an attempt to at least set forth a date range as the Plaintiff did in *Knight*." The trial court rejected petitioners' argument that because the misconduct was continuous and ongoing, it was not possible to state a single date of loss and noted that petitioners' claim forms alleged multiple discreet events such that petitioners could have made an effort to provide dates.

The trial court entered subsequent orders as to the demurrers of the District, the officer defendants, and the commissioner defendants, sustaining

9

without leave to amend their demurrers to several of petitioners' claims due to the failure to comply with the Government Claims Act.

Petitioners filed the instant petition seeking reversal of the trial court's orders sustaining RPI's demurrers without leave to amend as to the first, eighth, ninth, and 11th causes of action on the grounds that petitioners failed to comply with section 910. They argue their claim forms complied with section 910 or, alternatively, that the forms substantially complied with section 910. We requested briefing. After consideration of the petition and the RPI's informal opposition and petitioners' reply, we determined writ review is warranted because the rulings sustained without leave to amend RPI's demurrers as to some but not all causes of action, which deprives petitioners of the opportunity to plead their causes of action, and if the rulings were erroneous, a second trial would be necessary. (*Coulter v. Superior Court* (1978) 21 Cal.3d 144, 148, superseded by statute on other grounds as stated in *Strang v. Cabrol* (1984) 37 Cal.3d 720, 722–724; see *Barrett v. Superior Court* (1990) 222 Cal.App.3d 1176, 1183.) We issued an order to show cause why the requested relief should not be granted. RPI's filed a return by demurrer,[6] and the petitioners filed a reply.

---

[6] RPI's return by demurrer argues that mandamus relief is improper because petitioners do not argue the existence of a ministerial duty or an abuse of discretion. RPI's fail to address *Coulter v. Superior Court, supra*, 12 Cal.3d 144, which was cited in the petition and held mandamus relief is available when a demurrer is sustained without leave to amend as to some causes of action. (*Id.* at p. 148.) We reject RPI's procedural arguments and consider the merits of the petition, which RPI's also address in their return. (*Southern California Edison Co. v. Superior Court* (2024) 102 Cal.App.5th 573, 583, fn. 2 [addressing merits of petition when return was not verified].)

## DISCUSSION

### I. *Legal Principles*

Section 945.4 provides that "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with . . . Section 910 . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . . ." Section 910 requires that the claim state the "date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and provide "[a] general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." (§ 910, subds. (c) & (d).)

The purpose of these statutes is " ' "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citations.] It is well-settled that claims statutes must be satisfied even in the face of the public entity's actual knowledge of the circumstances surrounding the claim." [Citation.] The claims statutes also "enable the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future." [Citations.]' " (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 991.) "[T]he intent of the Government Claims Act is 'not to expand the rights of plaintiffs against government entities. Rather, the intent of the act is to confine potential governmental liability to rigidly delineated circumstances.' " (*Ibid.*)

The doctrine of substantial compliance has been applied to determine whether a plaintiff's claim form, which is defective in some respects, nonetheless substantially complies with all statutory requirements for a valid

11

claim form.  (*Santee v. Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 713 (*Santee*).)  "A claim substantially complies with a claims statute if the parties have stated sufficient information 'to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit.' [Citation.]"  (*Ardon v. City of Los Angeles* (2011) 52 Cal.4th 241, 248.)  However, the substantial compliance doctrine has been found not to apply when a plaintiff has wholly omitted from his or her claim form a particular statutory requirement.  (See *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 456 [compiling cases rejecting substantial compliance argument when a statutory requirement is missing from claim form].)  " '[S]ubstantial compliance cannot be predicated upon no compliance.' "  (*Ibid.*, quoting *Hall v. City of Los Angeles* (1941) 19 Cal.2d 198, 202.)

In *Knight v. City of Los Angeles* (1945) 26 Cal.2d 764 (*Knight*), our Supreme Court considered whether a claim asserting continuous damages due to flooding allegedly caused by the city's negligent installation and maintenance of drainage facilities was fatally defective because it did not specify the date of the accident as required by the applicable claim presentation statute.  (*Id.* at p. 766.)  The claim stated that the damages were " 'continuous and continuing' " and that " 'on or about and during the months of February and March, 1941,' " the city negligently caused water to flow through the claimant's property.  (*Ibid.*)  The Supreme Court found the claimant substantially complied with the claim statute.  (*Id.* at p. 767.)  It reasoned that because the damage was claimed to have been a continuous, progressive process, no exact date of occurrence of the accident could be stated.  However, the purposes of providing information to settle the claim or prevent further injury were satisfied because "[t]he span of time, February

12

and March of a certain year, as well as up to the date of the claim was given. Nothing would have been gained by the superfluous listing of each and every day during that time . . . . The rule of substantial compliance prevents the requirement of the impossible or absurd." (*Ibid.*) The court found the date range provided was sufficient specification to notify the defendant to investigate the claim and rectify the condition. (*Id.* at p. 768.) *Knight* noted the question presented did not involve a situation in which a required item was "wholly omitted" from the claim but, rather, concerned the sufficiency of the date information provided. (*Id.* at pp. 768–769.)

## II.    *Compliance with Government Claims Act*

Petitioners assert that the information presented on their claim forms complied with section 910 and the orders sustaining RPI's demurrers without leave to amend should be reversed. They make an initial, cursory argument that the District's claim form is defective because it asks for the date of "loss" instead of "occurrence or transaction," as stated in subdivision (c) of section 910. Petitioners are correct that the statute requires claimants to provide the "date . . . of the occurrence or transaction which gave rise to the claim asserted." (*Ibid.*) However, they do not provide a reasoned argument as to how the discrepancy between the term used in the District's claim form and the terms used in the statute absolves petitioners from the requirement to provide dates in their claim forms, or establish that the trial court erred in sustaining RPI's demurrers. Instead, they simply conclude that the date of occurrence is different than the date of the act causing the loss. Then they acknowledge that "the trial court recognized that the loss and the act causing may both be ongoing—as it is in this case" and which is consistent with

13

common definitions of "occurrence" in the insurance context.[7]  Our review of the record indicates that despite the incorrect term used on the District's claim form, the parties and the trial court correctly understood the issue to be what date information a claimant must provide in asserting a claim for continuing injury.  We are not convinced reversal is warranted because the claim form uses the term "loss" instead of "occurrence or transaction."

Petitioners, relying primarily on *Knight*, assert that the occurrence was ongoing and no specific date could be stated.  However, unlike in *Knight*, petitioners here provided no date range at all.  (*Knight, supra*, 26 Cal.2d at p. 768.)  Nor did their narrative description, which listed multiple specific events, provide any dates or date ranges.  RPI's incorrectly characterize petitioners' claims as not involving "some ongoing unlawful conduct" and, instead, as involving only discrete acts.  Retaliation may involve a continuing course of conduct.  (*Willis v. City of Carlsbad* (2020) 48 Cal.App.5th 1104, 1124–1125.)  However, claims involving continuous or ongoing misconduct are not exempt from the requirements of section 910, subdivision (c).  Here, as the trial court noted, petitioners failed to provide any dates at all even though they referred to multiple discrete instances of misconduct. Petitioners assert that because the "occurrence was ongoing, . . . no specific date could be stated."  However, they do not explain why this is so.  Notably, petitioner Parenti submitted a claim form on the same day which included dates of some of the discrete instances of misconduct and which the trial court found to be in substantial compliance with section 910.

---

[7] Petitioners cite to insurance policy definitions of "occurrence" as " 'an accident, including continuous or repeated exposure to substantially the same general harmful conditions.' "  (*Caldo Oil Co. v. State Water Resources Control Bd.* (1996) 44 Cal.App.4th 1821, 1828.)

14

Petitioners also argue that the date they signed the form, coupled with the statement that the date of loss was "ongoing," constitutes compliance with section 910. They rely on *Natural Soda Products Co. v. City of Los Angeles* (1943) 23 Cal.2d 193, another case involving a claim for damages caused by flooding that occurred over an extended period of time. (*Id.* at pp. 202–203.) *Natural Soda Products Co.* addressed the timeliness of a claim submitted more than six months after the initial injury but within six months of further injury caused by flooding. (*Id.* at p. 203.) The claimant was not required to present his claim within six months of the initial flooding because "the last flooding contributed to the injury as well as the first, and it would therefore be inaccurate to say that the first flooding was 'the occurrence from which the damage arose.'" (*Ibid.*) While *Natural Soda Products Co.* also involved a claim alleging continuous damage, it did not involve the question at issue here, i.e., whether a signed and dated claim form stating that the occurrence is ongoing satisfies the statutory requirement to state the date of the occurrence.

Petitioners argue, without citation to any additional authority, that they complied with section 910 because "[a] claim form was submitted and that form is dated and that form states the occurrence is ongoing—certainly as of that date." They go on to explain that RPI's ongoing wrongdoing is detailed in their first amended complaint, including that the wrongful conduct began on June 24, 2020, when Parenti met with Koh to discuss financial discrepancies within the District, and that Husain made a public records request on July 1, 2020, triggering Connolly to interrogate Khedr about the request and to threaten to fire anyone involved. Notably, while the first amended complaint attaches dates to many of the RPI's allegedly retaliatory actions, no such dates are included in the claim forms. We must

15

resolve the issue before us based on the information contained in the claim forms.

Petitioners next appear to suggest that the continuing violation doctrine applies to their claims. The continuing violation doctrine "allows liability for unlawful employer conduct occurring outside the statute of limitations if it is sufficiently connected to unlawful conduct within the limitations period." (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 802 (*Richards*).) To be "sufficiently connected," the unlawful employer conduct occurring outside the limitations period must (1) be "sufficiently similar in kind" to conduct within the limitations period; (2) occur "with sufficient frequency"; and (3) "[not have] acquired a degree of 'permanence.' " (*Ibid.*) The doctrine has been applied to determinations of the timeliness of government claims. (*Willis v. City of Carlsbad* (2020) 48 Cal.App.5th 1104, 1124.) However, the timeliness of petitioners' government claims is not at issue here.[8] We only resolve whether the claim forms provided the statutorily required information.

Petitioners' petition references the continuing violation doctrine generally and cites *Richards*, but it ignores the three criteria set forth in *Richards* for applying the doctrine and does not even attempt to show that their claims satisfy those criteria. More significantly, petitioners do not

_____

[8] Petitioners also argue that the date of accrual of their claims cannot be determined at the pleading stage and is a question of fact for the jury. This argument is not fully developed and is beside the point. The trial court's ruling did not determine the timeliness or date of accrual of petitioners' claims. Instead, it found petitioners' failure to specify a date or date range of the allegedly wrongful conduct violated the requirements of section 910. Nor do we need to determine the date of accrual of petitioners' claims in deciding whether the trial court erred in sustaining RPI's demurrers based on the lack of specified dates.

16

explain how this doctrine validates their claim forms, which fail to include any dates or even a date range of RPI's allegedly wrongful conduct. Indeed, the suggestion that the continuing violation doctrine may apply highlights the need for petitioners' claim forms to include dates of the allegedly wrongful conduct. Otherwise, it is not possible to determine whether similar actions occurred "with sufficient frequency" and were similar in kind to conduct within the limitations period. (*Richards, supra*, 26 Cal.4th at p. 802.) Petitioners cite no authority suggesting that if the continuing violation doctrine applies, then petitioners are not required to provide a date of the occurrence causing their injury or damage. We reject their unsupported suggestion.

## III. *Petitioners' Claim Forms Do Not Substantially Comply with the Government Claims Act*

Petitioners argue, in the alternative, that their claim forms substantially comply with the Government Claims Act. Petitioners correctly recognize that the substantial compliance doctrine considers the purpose of the claims statutes, which is to give the public entity timely notice of the nature of the claim so that it may investigate and settle those having merit without litigation. (*Santee, supra*, 220 Cal.App.3d at p. 713.) They then conclude, without meaningful analysis, that their claims substantially complied. Instead of analyzing how their claim notices—devoid of any dates of the allegedly wrongful conduct—provided sufficient information to permit the District to investigate their claims, they argue that RPI's retaliatory conduct continued after they submitted their claims. We are not persuaded that petitioners' allegations of retaliatory conduct occurring after they submitted their claim forms supports their position that their claim forms substantially complied with section 910 despite the forms' lack of specific dates.

17

Petitioners' claim forms refer to threats of termination, a public records request and whistleblower complaint, harassment and interrogation, disparaging statements, false claims against petitioners, and taking away roles from petitioners, none of which are tethered to any dates, or even date ranges. We find that petitioners' failure to specify a date or date range for the alleged wrongful conduct fails to substantially comply with all of the statutory requirements for a valid claim. (*Santee, supra*, 220 Cal.App.3d at p. 713.) While the narrative descriptions of the incident provide certain details, the failure to provide any dates, either in the description of the incident or in response to the "Date of Loss," impedes the District's ability to investigate the matter and to prevent further damage. (*Id.* at pp. 713–714.) Even if the District had actual knowledge of the circumstances referenced in the claim, the claims statutes still must be satisfied. (*DiCampli-Mintz v. County of Santa Clara, supra*, 56 Cal.4th at p. 991 [" 'It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim' "].)

Petitioners' reply argues RPI's do not present "any legitimate reason they require a 'date of loss' to be included with the claim." This argument is easily dismissed as section 910 expressly requires claimants to include the date of the occurrence or transaction. (§ 910, subd. (c).) They further argue that RPI's do not claim they were denied a chance to adequately investigate the claims based on the missing date information and cite to the portion of *Roger v. County of Riverside* (2020) 44 Cal.App.5th 510 which addresses a public entity's waiver of a late claim defense due to the entity's failure to notify the claimant of timeliness defects. (*Id.* at p. 523.) Petitioners again do not develop their argument. (*Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [court does not develop arguments for a

18

party].) Although RPI's do not specifically argue they lacked information to allow them to investigate the claims,[9] case law explains this is the test for applying the substantial compliance doctrine to defective claim forms. (*Santee, supra*, 220 Cal.App.3d at p. 713.) Moreover, to the extent petitioners intend to suggest RPI's waived the argument that there has been no substantial compliance with the claims statute, the record contradicts petitioners' suggestion. On February 16, 2021, RPI's sent petitioners notices of insufficiency of their claims based, in part, on the failure to specify dates.

Petitioners fail to persuade us that the substantial compliance doctrine applies to save their claim forms. Petitioners' failure to specify any dates, or even a date range, for the multiple instances of alleged misconduct identified in their claim forms, instead merely stating the date as "Numerous—Loss is ongoing" and dating the form itself, does not constitute substantial compliance with section 910. Such indefinite and vague information does not provide sufficient information to allow the receiving entity to investigate petitioners' claims.

### DISPOSITION

The petition for writ of mandate is denied. Real parties in interest are entitled to their costs in this writ proceeding. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

Jackson, P. J.

WE CONCUR:

Simons, J.
Burns, J.

A173872/*Khedr v. Superior Court*

---

[9] RPI's argue that the date information was necessary for them to determine whether the late claim procedures of section 911.3 and 911.4 applied.